MARK B. HANSON, ESQ.
Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738 P.O. Box 10,000
Saipan, Mariana Islands 96950
Telephone:    (670) 233-8600
Facsimile:    (670) 233-5262

Attorney for Plaintiff Jiang Li Rong

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JIANG LI RONG, | CASE NO.  CV 05-00048 |
| Plaintiff, | |
| vs. | FIRST AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION ACT OF 2000, THE FAIR LABOR STANDARDS ACT AND SUPPLEMENTAL STATE LAW CLAIMS |
| HONG KONG ENTERTAINMENT (OVERSEAS) INVESTMENT, LTD., a CNMI corporation doing business as Tinian Dynasty Hotel and Casino, NEW ECHO ENTERTAINMENT, INC., a CNMI corporation doing business as Echo Karaoke, ALFRED YUE, ZHANG JIAN HUA, ZHANG DE MING,  ZHANG JIAN GANG, LI LI, LI FENG and Does 1-10, | |
| Defendants. | DEMAND FOR JURY TRIAL |

COMES NOW, JIANG LI RONG with the following Verified Complaint against HONG

KONG ENTERTAINMENT (OVERSEAS) INVESTMENT, LTD., NEW ECHO

ENTERTAINMENT, INC., ALFRED YUE, ZHANG JIAN HUA, ZHANG DE MING,  ZHANG

JIAN GANG, LI LI, LI FENG and several unnamed doe defendants:

JURISDICTION

1.  The Trafficking Victims Protection Act of 2000 and the Trafficking Victims Protection

Reauthorization Act of 2003 apply to this matter pursuant to the express terms of §§ 103(10) and

103(12) of Public Law 106-386, § 4(a)(4) of Public Law 108-193 and 18 U.S.C. § 1595 as they apply through the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, 48 U.S.C. § 1801 *et seq.*

2.  This Court has jurisdiction over Plaintiff's human trafficking claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337(a) (proceedings arising under any Act of Congress regulating commerce).

3.  The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), applies to this matter through the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Article V, § 502(a)(2).

4.  This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337(a) (proceedings arising under any Act of Congress regulating commerce).

5.  This Court also has jurisdiction under the FLSA, 29 U.S.C. § 216(b) to adjudicate Plaintiff's claims.

6.  This Court has jurisdiction over Plaintiff's non-FLSA claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

7.  Venue is properly placed in this Court as at all relevant times Plaintiff was an employee of Defendants doing business in the Commonwealth of the Northern Mariana Islands ("CNMI").

PARTIES

8.  Plaintiff Jiang Li Rong ("Ms. JIANG" or "Plaintiff") is a citizen of the People's Republic of China currently residing in Saipan, CNMI and is a victim of human trafficking.

9.  Upon information and belief, Defendant Hong Kong Entertainment (Overseas) Investment, Ltd. ("TINIAN DYNASTY") is a CNMI corporation doing business as, *inter alia*, Tinian Dynasty Hotel and Casino, with its principal place of business in San Jose, Tinian, CNMI.  Among other illegal acts of the defendant, TINIAN DYNASTY employed Plaintiff and facilitated her

transportation to Saipan, CNMI where Plaintiff became a victim of human trafficking.

10. Upon information and belief, Defendant New Echo Entertainment, Inc. ("ECHO KARAOKE") is a is a CNMI corporation doing business as Echo Karaoke with its principal place of business in Garapan, Saipan, CNMI. Also upon information and belief, ECHO KARAOKE was incorporated by Defendant ALFRED YUE in Commonwealth of the Northern Mariana Islands. ECHO KARAOKE purported to employ Plaintiff for part of the time Plaintiff was employed in Saipan; it is the principal business of other defendants; and ECHO KARAOKE is another entity used as a mechanism in a scheme or plan by the defendants herein to take actions that caused Plaintiff to suffer and to continue to suffer injuries as a victim of human trafficking.

11. Upon information and belief, Defendant ALFRED YUE is a individual and a United States citizen who currently resides in San Jose, Tinian, CNMI. At all times relevant hereto, ALFRED YUE was the managing director of Defendant TINIAN DYNASTY and the natural father of a child born to ALFRED YUE and Defendant ZHANG JIAN HUA. At all times relevant hereto, ALFRED YUE was an active and knowing participant in a scheme or plan that caused Plaintiff to suffer and to continue to suffer injuries as a victim of human trafficking. At all times relevant hereto, ALFRED YUE exercised sufficient control and influence over the other defendants herein, both directly and indirectly, to cause and/or to assist other defendants to take actions that caused Plaintiff to suffer and to continue to suffer injuries as a victim of human trafficking.

12. Upon information and belief, Defendant ZHANG JIAN HUA is a individual and a citizen of the People's Republic of China who, at times relevant hereto, resided in Capitol Hill, Saipan, CNMI. Her current whereabouts are unknown to Plaintiff, but she is believed to be in China. At all times relevant hereto, ZHANG JIAN HUA was the manger and a stakeholder in fact of Defendant ECHO KARAOKE and the natural mother of a child born to ZHANG JIAN HUA and Defendant ALFRED YUE. At all times relevant hereto, ZHANG JIAN HUA was an active and knowing participant in a scheme or plan that caused Plaintiff to suffer and to continue to suffer injuries as a

victim of human trafficking.  At all times relevant hereto, ZHANG JIAN HUA exercised sufficient control and influence over the other defendants herein, both directly and indirectly, to cause and/or to assist other defendants to take actions that caused Plaintiff to suffer and to continue to suffer injuries as a victim of human trafficking.

13. Upon information and belief, Defendant ZHANG DE MING is a individual and a citizen of the People's Republic of China who's current residence is unknown to Plaintiff.  ZHANG DE MING was at all times relevant hereto a stakeholder of ECHO KARAOKE, the father of ZHANG JIAN HUA and an active and knowing participant in a scheme or plan to transport Plaintiff to the CNMI and to cause and/or to assist other defendants to take actions that caused Plaintiff to suffer and to continue to suffer injuries as a victim of human trafficking.

14. Upon information and belief, Defendant ZHANG JIAN GANG  is a individual and a citizen of the People's Republic of China who's current residence is unknown to Plaintiff.  ZHANG JIAN GANG was at all times relevant hereto an employee of ECHO KARAOKE, the brother of ZHANG JIAN HUA and an active and knowing participant in a scheme or plan by the defendants herein to take actions that caused Plaintiff to suffer and to continue to suffer injuries as a victim of human trafficking.

15. Upon information and belief, Defendant LI LI is a individual and a citizen of the People's Republic of China who's current residence is unknown to Plaintiff.  LI LI was at all times relevant hereto an employee of ECHO KARAOKE and an active and knowing participant in a scheme or plan by the defendants herein to take actions that caused Plaintiff to suffer and to continue to suffer injuries as a victim of human trafficking.

16. Upon information and belief, Defendant LI FENG is a individual and a citizen of the People's Republic of China who's current residence is unknown to Plaintiff.  LI FENG was at all times relevant hereto an employee of ECHO KARAOKE, the younger sister of Defendant LI LI and an active and knowing participant in a scheme or plan by the defendants herein to take actions that

caused Plaintiff to suffer and to continue to suffer injuries as a victim of human trafficking.

17. Upon information and belief, one or more additional defendants (the "Doe Defendants") who's identities are not presently known to Plaintiff, were knowing participants in a scheme or plan by the defendants herein to take actions that caused Plaintiff to suffer and to continue to suffer injuries as a victim of human trafficking. Upon ascertaining the true identities of the Doe Defendants, Plaintiff intends to file an amended complaint which will identify them more specifically.

18. Unless otherwise noted, all references to Defendants herein are references to all above-named Defendants, jointly and severally, regardless of their trade name ("DEFENDANTS").

19. At all times relevant hereto, DEFENDANTS, and each of them, were acting as agents for each other.

20. At all times relevant hereto, DEFENDANTS, and each of them, among other violations of law, jointly, knowingly and willfully, participated in, facilitated, conspired, and aided and abetted, directly and indirectly, in the recruitment, harboring and transportation of Plaintiff JIANG for labor and services in violation of 18 U.S.C. §§ 1589 and 1590.

21. At all times relevant hereto, DEFENDANTS and all of them were joint employers of Ms. JIANG as that term is used in and has been interpreted under the FLSA and the Commonwealth Minimum Wage and Hour Act, 4 C.M.C. §§ 9211 *et seq.* (2000) ("MWHA").

FACTS

22. Plaintiff JIANG is from Yanji City in the Jilin Province of the People's Republic of China.

23. Through a referral from a local recruiting agency in Yanji City, Plaintiff was introduced to Defendant ZHANG JIAN HUA.

24. Defendant ZHANG JIAN HUA stated that she was looking for a suitable person to take care of her infant child.

25. In about October 2004, Plaintiff JIANG went to work for Defendant ZHANG JIAN HUA

at Defendant ZHANG JIAN HUA's home in Yanji City where Plaintiff worked for about one month taking care of Defendant ZHANG JIAN HUA's infant child and performing housework for the defendant.

26. After about the first week of working for Defendant ZHANG JIAN HUA in Yanji City, Defendant ZHANG JIAN HUA suggested that Plaintiff JIANG come to Saipan to work as a housekeeper and take care of Defendant ZHANG JIAN HUA's infant child.

27. Defendant ZHANG JIAN HUA told Plaintiff JIANG that JIANG would be paid $250.00 per month for her services as a housekeeper and babysitter in Saipan. Defendant ZHANG JIAN HUA also promised to pay all of Plaintiff JIANG's processing fees, transportation expenses and any other expenses associated with Plaintiff JIANG'S transportation to and employment in the CNMI.

28. Soon thereafter, upon information and belief, Defendants ZHANG JIAN HUA, ALFRED YUE and TINIAN DYNASTY began processing the documents necessary for Plaintiff JIANG's transportation to and employment in the CNMI.

29. Plaintiff JIANG did not participate in the preparation of her application for employment as a nonresident worker in the CNMI, nor was Plaintiff JIANG informed by DEFENDANTS of the substance of such application, nor were any documents included in her application shown to her and/or translated to her and/or otherwise explained to Plaintiff JIANG. Plaintiff does not speak or read the English language.

30. With the exception of her passport which she presently holds, Plaintiff JIANG has never been provided a copy of her employment contract nor any other documents associated with DEFENDANTS' procurement of her transportation to, entry into and employment within the CNMI. DEFENDANTS held and refused to allow Plaintiff to have possession of the entry permit she was issued by the CNMI government.

31. Upon DEFENDANTS' successful procurement of all necessary approval from the CNMI Department of Labor and the Division of Immigration Services, DEFENDANTS had Plaintiff JIANG

board a plane from Yanji City, China bound for Saipan, CNMI via Shanghai, China.

32. Plaintiff JIANG was escorted from Yanji to Saipan by Defendant ZHANG JIAN GANG and arrived in Saipan in the early morning of December 29, 2004 where JIANG was met at the airport by Defendant ZHANG JIAN HUA.   Jiang was immediately transported to her new home in an apartment of Vestcor Village, Capitol Hill, Saipan, CNMI near the apartment residence of Defendants ZHANG JIAN HUA and LI MEI HUA (the mamasan of ECHO KARAOKE).

33. From her arrival in Saipan until her rescue from DEFENDANTS on May 7, 2005, Plaintiff JIANG was "housed" with four to five other employees of ECHO KARAOKE in the Vestcor Village, three of whom are defendants herein; however, almost all of Plaintiff's time was spent cleaning the various apartments rented by DEFENDANTS and caring for the infant child of Defendants ZHANG JIAN HUA and ALFRED YUE.

34. Almost immediately after Plaintiff JIANG's arrival in Saipan, it became clear to JIANG that Defendant ZHANG JIAN HUA had no intention of honoring the promises she had made to JIANG in China.  For example, ZHANG JIAN HUA began insisting that JIANG repay ZHANG JIAN HUA for all of the processing fees and transportation expenses ZHANG JIAN HUA incurred in bringing JIANG to work in Saipan.

35. Soon thereafter, Defendant ZHANG JIAN HUA began insisting also that JIANG pay ZHANG JIAN HUA a recruitment fee similar to the fees paid by other workers to agencies in China for the jobs these workers obtain in Saipan through the agencies.  Defendant ZHANG JIAN HUA insisted that JIANG pay her between 35,000 to 50,000 RMB (approximately $4,300.00 - $6,200.00) as a "recruitment fee," eventually going so far as to physically force JIANG to acknowledge a written promise to pay Defendant ZHANG JIAN HUA the "recruitment fee."

36. The majority of Plaintiff JIANG's work on Saipan consisted of cleaning, cooking and taking care of the minor child of Defendants ZHANG JIAN HUA's and ALFRED YUE's infant child. However, in addition to this work, JIANG was, on occasion, required to clean the common areas,

private rooms and toilet facilities at ECHO KARAOKE.  From the day of her arrival in Saipan on December 29, 2004 through her rescue from Vestcor Village on the morning of May 7, 2005, Plaintiff JIANG worked more than 20 hours per day, seven days per week, with less than 5 hours of each day of her own in which to sleep.

37.  The first payment of a salary JIANG received for her services in Saipan was from Defendant ZHANG JIAN HUA in the amount of $155 on about January 29, 2005.  Defendant ZHANG JIAN HUA explained to JIANG on that day that ZHANG JIAN HUA was withholding $95.00 of the agreed salary of $250.00 per month for repayment of ZHANG JIAN HUA's processing fees.

38.  The second and last payment of a salary JIANG received from Defendant ZHANG JIAN HUA for her services in Saipan was in the amount of $100.00 on about March 3, 2005.

39.  Defendant ZHANG JIAN HUA failed and refused to pay JIANG any additional amounts for wages, insisting that JIANG owed ZHANG JIAN HUA money for processing, transportation and recruitment fees for her employment in Saipan.

40.  Upon information and belief, from the time of Plaintiff's arrival in the CNMI until at least April 28, 2005, Defendant TINIAN DYNASTY was Plaintiff JIANG's employer of record, responsible by CNMI statute for the payment of processing fees, transportation fees, wages, medical expenses and repatriation expenses, among other obligations, associated with Plaintiff JIANG's employment in the CNMI.

41. Defendant TINIAN DYNASTY never provided Plaintiff JIANG with any compensation for the work she performed in the CNMI.

42.  Defendant ALFRED YUE, the father of the infant child for which Plaintiff JIANG cared during her employment with DEFENDANTS, never provided Plaintiff JIANG with any compensation for the work she performed in the CNMI.

43. Also upon information and belief, on or about April 28, 2005, DEFENDANTS purported

to cause Plaintiff JIANG to be transferred from the employment of TINIAN DYNASTY to the employment of ECHO KARAOKE as a "waitress" by a consensual transfer approved by the Director of Labor that day.

44. That Grant of Transfer Relief for Entry Permit Number 291817 dated April 28, 2005 purports to be signed by Defendant ZHANG DE MING on behalf of ECHO KARAOKE and Plaintiff JIANG, although the document was never translated and/or explained to Plaintiff (nor were any other documents associated with Plaintiff's consensual transfer translated or explained to Plaintiff).

45. Defendant ECHO KARAOKE never provided Plaintiff JIANG with any compensation for the work she performed in the CNMI.

46. No other defendant herein, nor any other third party, ever provided Plaintiff JIANG with any compensation for the work she performed in the CNMI.

47. Throughout Plaintiff JIANG's employment in Saipan, and in order to keep Plaintiff in their servitude, DEFENDANTS took the following actions, among others:

48. On about February 16, 2005, Defendant ZHANG JIAN HUA secretly tape recorded Plaintiff JIANG, claimed it was evidence that JIANG was beating her infant child, and threatened to have JIANG arrested by CNMI police for child abuse.  Defendant ZHANG JIAN HUA, with the assistance of her brother Defendant ZHANG JIAN GANG, then proceeded to beat Plaintiff JIANG, berate her, and threaten her.  In addition to their threats to report JIANG to the police, and while they continued to beat JIANG, Defendants ZHANG JIAN HUA and ZHANG JIAN GANG repeatedly told Plaintiff that she was a slave and they were her masters, that they could and would kill her and throw her into the ocean and nobody would know, and that they would tell Plaintiff's family in China that she was smuggled out of the CNMI and had disappeared.  This beating and berating lasted for almost four hours.

49. In March of 2005, Defendant ZHANG JIAN GANG beat Plaintiff again purportedly for

failing to clean the oven of their apartment which he claimed was a sign she was not doing her job.

50.  In April of 2005, upon returning home from ECHO KARAOKE at around 3:00 a.m., Defendants LI LI and LI FENG, in the presence of and at the direction of Defendant ZHANG JIAN HUA, beat Plaintiff for no stated reason, causing Plaintiff to bleed and swell all over her body and eventually pass out. Following the beating, Defendant ZHANG JIAN HUA told Plaintiff JIANG that if anyone asked about her bruises, Plaintiff was to tell them that Plaintiff had accidentally hurt herself.

51.  Frequently during her employment in Saipan, Defendant ZHANG JIAN HUA would accuse Plaintiff JIANG of stealing from her and would threaten to kill her if she found any stolen items in Plaintiff JIANG's personal things, which Defendant ZHANG JIAN HUA would search from time to time.

52.  Having to suffer continual abuse at the hands of and at the direction of Defendant ZHANG JIAN HUA, Plaintiff would often beg to be allowed to go back to China.  Each time, Defendant ZHANG JIAN HUA solidly refused the plea, insisting that Plaintiff JIANG's only option was to continue working as her maid and nanny in Saipan and that she must work well, again threatening her with more beatings and telling Plaintiff that the girls from ECHO KARAOKE were watching Plaintiff closely and reporting her activities to Defendant ZHANG JIAN HUA.

53.  Frequently during her employment in Saipan, Defendants ZHANG JIAN HUA and ZHANG JIAN GANG would tell Plaintiff that if she ran away and returned to China on her own, the defendants would cause physical injury to Plaintiff JIANG's family members in China, including her 17 old son in Yanji City.  Defendants ZHANG JIAN HUA and ZHANG JIAN GANG would claim that they had friends in the Chinese mafia and in the Chinese police and they told Plaintiff JIANG that she could not run away.  To reinforce their threats, Defendants ZHANG JIAN HUA and ZHANG JIAN GANG would relate to Plaintiff stories of their vengeance on others in China who had crossed them.

54. In the early morning of May 7, 2005, Defendants ZHANG JIAN HUA, ZHANG JIAN GANG and other employees of ECHO KARAOKE returned home from work at about 3:30 a.m. Defendant ZHANG JIAN HUA immediately confronted Plaintiff JIANG accusing her of "talking to outsiders" and again accused Plaintiff of yelling at Defendant ZHANG JIAN HUA's infant child. Defendant ZHANG JIAN HUA then had an ECHO KARAOKE employee remove the infant child from the apartment and she locked the door.  Plaintiff JIANG was left alone in the apartment with Defendants ZHANG JIAN HUA and ZHANG JIAN GANG who proceeded to beat her senseless causing Plaintiff JIANG to suffer multiple abrasions and contusions to her face, head, neck, arms, legs and torso and causing Plaintiff to black out and leaving Plaintiff with internal pains for days.  They dragged Plaintiff around the apartment on the floor by her hair.  They chocked her and they threatened to shave her head.  They rammed Plaintiff's head into the wall several times.  They stomped on her chest and sat on her stomach.  They spit water in her face, beat her with a water bottle and threw her to the floor and stepped on her head.  Defendants ZHANG JIAN HUA and ZHANG JIAN GANG, while beating Plaintiff JIANG, constantly made threats that they would harm her son in China if she complained.  They told JIANG that no one in Saipan could help her.  Plaintiff JIANG begged for them to stop the beating to no avail.

55. After the beating, ZHANG JIAN GANG suggested that ZHANG JIAN HUA have Plaintiff JIANG sign a promissory note for the processing fees, transportation fees and the recruitment fee that Defendant ZHANG JIAN HUA claimed she was owed.  Defendant ZHANG JIAN HUA agreed that this was a good idea — that it would facilitate a claim against JIANG if she ran away back to China. Thereafter, with Defendants ZHANG JIAN HUA and ZHANG JIAN GANG threatening to beat her if she refused, Plaintiff JIANG was forced to write a letter "confessing" that she had abused Defendant ZHANG JIAN HUA's minor child, that JIANG was generally a problem employee, and that Plaintiff JIANG owed Defendant ZHANG JIAN HUA money for her processing fees, transportation fees and a recruitment fee and damages for all the problems JIANG had caused. After

finishing writing what Defendant ZHANG JIAN HUA demanded, Plaintiff JIANG refused to sign the letter.  Defendant ZHANG JIAN HUA again with treats of additional beatings, physically took JIANG's hand and smeared her fingerprint in lipstick purportedly as JIANG's "acknowledgment" of the promise.

56.  After the beatings and forced confession, Defendant ZHANG JIAN HUA and the others went to sleep.  After everyone was asleep, JIANG snuck outside and asked for help from a neighbor who drove JIANG to the Saipan police station where the Department of Public Safety officers ensured JIANG the proper protection and got her medical attention for her injuries.

57.  Throughout her confinement by DEFENDANTS prior to her escape on May 7, 2005, Plaintiff JIANG was prohibited from talking to "outsiders" and was not allowed to make calls to her family in China.  Plaintiff JIANG was prohibited by DEFENDANTS from going out by herself and was constantly threatened with further beatings for any disobedience.

58.  Plaintiff JIANG, not able to speak English, in a strange land, in a place where she believed she was unable to get help, was at the complete mercy of her merciless keepers.

FIRST CAUSE OF ACTION
(Forced Labor - Human Trafficking)

59.  Plaintiff incorporates paragraphs 1 through 58 above as if fully set forth herein.

60.  Section 112 of the Trafficking Victims Protection Act of 2000, Public Law 106-386, amended, *inter alia*, chapter 77 of title 18, United States Code, by adding the new sections 1589 and 1590:

61.  Title 18 U.S.C. § 1589 states:

> Whoever knowingly provides or obtains the labor or services of a person—
>> (1) by threats of serious harm to, or physical restraint against, that person or another person;
>> (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
>> (3) by means of the abuse or threatened abuse of law or

the legal process, shall be fined under this title or imprisoned not more than 20 years, or both.

If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

62.   Title 18 U.S.C. § 1590 states:

Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

63.   Section 4 of the Trafficking Victims Protection Reauthorization Act of 2003, Public Law 108-193, further amended chapter 77 of title 18, United States Code by adding a new section 1595 which provides a private right of action:

§ 1595.   Civil remedy

(a) An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

(b)(1) Any civil action filed under this section shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.
(2) In this subsection, a 'criminal action' includes investigation and prosecution and is pending until final adjudication in the trial court.

64.   DEFENDANTS, and each of them, jointly, knowingly and willfully, participated in, facilitated, conspired, and aided and abetted, directly and indirectly, in the recruitment, harboring and transportation of Plaintiff JIANG for labor and services in violation of 18 U.S.C. §§ 1589 and 1590.

Page 13 of  24

65. DEFENDANTS, and each of them, jointly and severally, are the actual and proximate cause of substantial injuries to Plaintiff JIANG, including but not limited to pain and suffering, humiliation, emotional distress, loss of freedom, loss of enjoyment of life, and the deprivation of Plaintiff's fundamental human rights.

66. DEFENDANTS, and each of them, jointly and severally, are liable to Plaintiff for such injuries in an amount not less than One Million Dollars ($1,000,000.00).

67. DEFENDANTS, and each of them, jointly and severally, because of their extreme, outrageous, willful and malicious conduct, are further liable to Plaintiff for punitive damages in an amount not less than One Million Dollars ($1,000,000.00).

SECOND CAUSE OF ACTION
(FLSA Violation - Unpaid Overtime Compensation)

68. Plaintiff incorporates paragraphs 1 through 67 above as if fully set forth herein.

69. At all times relevant to this action, Ms. JIANG was an employee of DEFENDANTS, and each of them jointly, within the meaning of § 203(e)(1) of the FLSA and § 9212(e) of the MWHA.

70. At all times relevant to this action, DEFENDANTS, and each of them jointly, were employers of Ms. JIANG within the meaning of § 203(d) of the FLSA and § 9212(f) of the MWHA.

71. At all times relevant to this action, Ms. JIANG was employed, jointly, by DEFENDANTS within the meaning of § 203(g) of the FLSA and § 9212(d) of the MWHA.

72. At all times relevant to this action, Ms. JIANG was employed, jointly, by DEFENDANTS in Saipan, Commonwealth of the Northern Mariana Islands.

73. At all times relevant to this action, DEFENDANTS were an enterprise within the meaning of § 203(r)(1) of the FLSA.

74. At all times relevant to this action, DEFENDANTS were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of § 203(s)(1) of the FLSA.

75. At all times relevant to this action, Ms. JIANG, as an employee of DEFENDANTS, was

engaged in commerce within the meaning of § 207(a)(1) of the FLSA.

76. Plaintiff JIANG worked more than forty (40) hours per week for DEFENDANTS in every week that Plaintiff JIANG was employed by DEFENDANTS.

77. At all times while employed by DEFENDANTS, Plaintiff JIANG was employed, and actually performing work, in job category or categories that are not exempt from the provisions of the FLSA and/or the MWHA.

78. DEFENDANTS failed to pay Plaintiff the applicable minimum wage for all hours worked for DEFENDANTS in violation of § 9221(a)(2) of the MWHA.

79. DEFENDANTS failed to pay Plaintiff JIANG all overtime premiums required by § 207(a) of the FLSA and by § 9222 of the MWHA.

80. DEFENDANTS failed to maintain full and accurate records of the hours actually worked by Plaintiff JIANG as required by § 215(a)(5) of the FLSA and § 9232(a) of the MWHA.

81. All of the actions and omissions alleged above were undertaken by DEFENDANTS, jointly, either directly or through their agent or agents.

82. All of the actions and omissions alleged above were willful within the meaning of § 9243 of the MWHA, and with regard to the applicability of the statute of limitations on FLSA claims and claims pursuant to the Commonwealth Nonresident Workers Act, 3 C.M.C. §§ 4411 *et seq.* (2000).

83. DEFENDANTS have violated the provisions of § 207(a) of the FLSA by failing to pay Plaintiff JIANG overtime compensation in the amount of one and one-half times her regular pay rate for all of the hours worked by Plaintiff in excess of forty (40) hours in each work week.

84. Because Plaintiff was not provided with at least 5 hours per day of rest time away from the duties and responsibilities of her employment with DEFENDANTS, Plaintiff's effective "work hours" for the period from December 29, 2004 through May 7, 2005 were 24 hours per day, 7 days per week.

85. For the entire period of Plaintiff JIANG's employment by DEFENDANTS in Saipan,

Plaintiff received from DEFENDANTS payments for wages in the total amount of $255.00.

86.   Plaintiff JIANG is entitled to payment of unpaid overtime compensation from DEFENDANTS, jointly and severally, calculated based on regular pay rate of $3.05 per hour as adjusted by the regular rate provisions of § 207(e) of the FLSA, and an additional equal amount as liquidated damages.

87.   Plaintiff JIANG is also entitled to costs of the action and reasonable attorney's fees pursuant to § 216(b) of the FLSA.

THIRD CAUSE OF ACTION<br>(MWHA Violation - Unpaid Overtime Compensation)

88.   Plaintiff incorporates paragraphs 1 through 87 above as if fully set forth herein.

89.   DEFENDANTS have violated the provisions of § 9222 of the MWHA by failing to pay Plaintiff JIANG overtime compensation in the amount of one and one-half times her regular pay rate for all of the hours worked by Plaintiff in excess of forty (40) hours in each work week.

90.   Plaintiff JIANG is entitled to payment of unpaid overtime compensation from DEFENDANTS, jointly and severally, calculated based on regular pay rate of $3.05 per hour as adjusted by the regular rate provisions of § 9212(g) of the MWHA, and an additional equal amount as liquidated damages for DEFENDANTS' willful violation.

91.   Plaintiff JIANG is also entitled to costs of the action and reasonable attorney's fees pursuant to § 9244(b) of the MWHA.

FOURTH CAUSE OF ACTION<br>(MWHA Violation - Unpaid Minimum Wage)

92.   Plaintiff incorporates paragraphs 1 through 91 above as if fully set forth herein.

93.   Defendant has violated the provisions of § 9221(a)(2) of the MWHA by failing to pay Plaintiff JIANG a minimum wage of at least $3.05 per hour for all of the hours worked by Plaintiff each work week.

94.   Plaintiff JIANG is entitled to payment of unpaid minimum wages from Defendant, and

an additional equal amount as liquidated damages for DEFENDANTS' willful violation.

95.  Plaintiff JIANG is also entitled to costs of the action and reasonable attorney's fees pursuant to § 9244(b) of the MWHA.

FIFTH CAUSE OF ACTION
(Breach of Contract)

96.  Plaintiff incorporates paragraphs 1 through 95 above as if fully set forth herein.

97.  Upon information and belief, at all times relevant to this action, Plaintiff JIANG had a valid and binding Employment Contract with DEFENDANTS.

98.  Also upon information and belief, pursuant to that Employment Contract, DEFENDANTS were required, among other obligations, to pay Plaintiff at least $3.05 per hour for each hour Plaintiff worked for DEFENDANTS and 1.5 times that rate as an overtime premium for all hours worked by Plaintiff in excess of 40 hours in a week.

99.  By failing to pay Plaintiff in accord with the terms of the Employment Contract, DEFENDANTS materially breached the Employment Contract.

100.  Because of DEFENDANTS' material breach, Plaintiff is entitled to expectation, incidental and consequential damages from DEFENDANTS, jointly and severally, in an amount no less than Sixteen Thousand Seven Hundred Eighty Seven Dollars ($16,787.00), plus an equal amount as liquidated damages pursuant to 3 C.M.C. § 4447(d).

101.  Plaintiff JIANG is also entitled to and costs and reasonable attorney's fees pursuant to 3 C.M.C. § 4447(d) .

SIXTH CAUSE OF ACTION
(Fraud)

102.  Plaintiff incorporates paragraphs 1 through 101 above as if fully set forth herein.

103.  In about October through December 2004, Defendant ZHANG JIAN HUA several representations to Plaintiff regarding Plaintiff going to work for the Defendant in Saipan, including but not limited to: that Defendant ZHANG JIAN HUA would pay Plaintiff JIANG $250.00 per

month as a salary, that Defendant ZHANG JIAN HUA would cover all processing fees and transportation expenses and that, because Plaintiff would be hired directly and not through an agency, Plaintiff would avoid having to pay a recruiting fee.

104. All such representations of Defendant ZHANG JIAN HUA were of material facts that, at the time they were made by Defendant ZHANG JIAN HUA, were known by the Defendant to be false.

105. At the times she made the representations to Plaintiff in China, Defendant ZHANG JIAN HUA had no intention of following through with such representations. Instead, it was the intent of Defendant ZHANG JIAN HUA that Plaintiff JIANG believe the misrepresentations of the Defendant and rely on those representations to agree to go to work for the Defendant in Saipan.

106. Plaintiff did, in fact, reasonably rely on the misrepresentations of Defendant ZHANG JIAN HUA about, among other things, her salary, the payment of expenses and recruiting fees and her living and working conditions.

107. Because of her reliance on the misrepresentations of Defendant ZHANG JIAN HUA, Plaintiff JIANG was transported into a life of beatings and involuntary servitude at that hands of DEFENDANTS.

108. DEFENDANTS, and each of them, knew of Defendant ZHANG JIAN HUA's deception and aided and abetted in the furtherance of the fraud by, among other actions: facilitating the legal employment of Plaintiff JIANG in the CNMI; facilitating the transportation of Plaintiff JIANG to the CNMI; facilitating the legal entry of Plaintiff JIANG into the CNMI; ensuring that Plaintiff JIANG continued to believe the misrepresentations of Defendant ZHANG JIAN HUA until it was too late and she was well confined in the servitude of DEFENDANTS all pursuant to the plan or scheme of DEFENDANTS that caused Plaintiff JIANG to become a victim of human trafficking.

109. As an actual and proximate cause of DEFENDANTS' fraud, Plaintiff has suffered substantial economic and non-economic injuries, including but not limited to pain and suffering,

humiliation, emotional distress, loss of freedom, loss of enjoyment of life, and the deprivation of Plaintiff's fundamental human rights.

110.  For their fraud, DEFENDANTS, and each of them, jointly and severally, are liable to Plaintiff for such injuries in an amount not less than One Million Dollars ($1,000,000.00).

111.  DEFENDANTS, and each of them, jointly and severally, because of their extreme, outrageous, willful and malicious conduct, are further liable to Plaintiff for punitive damages in an amount not less than One Million Dollars ($1,000,000.00).

SEVENTH CAUSE OF ACTION
(Battery)

112.  Plaintiff incorporates paragraphs 1 through 111 above as if fully set forth herein.

113.  On numerous occasions described herein, DEFENDANTS physically beat Plaintiff JIANG  and/or aided and abetted in the beating of Plaintiff JIANG.

114.  DEFENDANTS, and each of them, intended that their actions would lead to the beating of, and actually did lead to the beating of, Plaintiff JIANG.

115.  Such beating caused Plaintiff JIANG to suffer cuts and bruises, they caused her to lose consciousness on occasion, and have caused her severe emotional trauma.

116.  For the multiple batteries inflicted on Plaintiff, DEFENDANTS, and each of them, jointly and severally, are liable to Plaintiff in an amount not less than One Million Dollars ($1,000,000.00).

117.  DEFENDANTS, and each of them, jointly and severally, because of their extreme, outrageous, willful and malicious conduct, are further liable to Plaintiff for punitive damages in an amount not less than One Million Dollars ($1,000,000.00).

EIGHTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

118.  Plaintiff incorporates paragraphs 1 through 117 above as if fully set forth herein.

119.  Not only was defendant repeatedly beaten at the hands of DEFENDANTS, but

DEFENDANTS also continually intimidated, harassed and threatened Plaintiff and Plaintiff's family members with substantial physical harm and even death if Plaintiff did not do what DEFENDANTS demanded, if Plaintiff spoke to "outsiders," if Plaintiff were to attempt to run away, and sometimes for no apparent reasons whatsoever.

120.    From her arrival in December of 2004 through her eventual escape from DEFENDANTS in May 2005, Plaintiff lived under constant fear of reprisals, further beatings, harm to her family members in China, and fear of her own death.

121.  All of the actions taken by DEFENDANTS were taken with the intent to create such fear and cause Plaintiff JIANG severe emotional distress.

122.  The actions taken by DEFENDANTS were extreme and outrageous and are the actual and proximate cause of Plaintiff's sever emotional distress.  The distress suffered by Plaintiff at the hands of DEFENDANTS is more than a reasonable person could be expected to endure.

123.  For the severe emotional distress inflicted on Plaintiff, DEFENDANTS, and each of them, jointly and severally, are liable to Plaintiff in an amount not less than One Million Dollars ($1,000,000.00).

124.  DEFENDANTS, and each of them, jointly and severally, because of their extreme, outrageous, willful and malicious conduct, are further liable to Plaintiff for punitive damages in an amount not less than One Million Dollars ($1,000,000.00).

NINTH CAUSE OF ACTION
(False Imprisonment)

125.  Plaintiff incorporates paragraphs 1 through 124 above as if fully set forth herein.

126.  On a number of occasions described herein, Plaintiff was physically restrained and/or physically confined by DEFENDANTS against her will.

127.  Throughout the entire time Plaintiff worked for DEFENDANTS, Plaintiff was confined, against her will, by direct and indirect threats of force.

128.  The actions of DEFENDANTS were taken directly and/or were taken indirectly and/or

were aided and abetted by other defendants herein.

129.  It was the intent of all DEFENDANTS that Plaintiff, during her confinement with by DEFENDANTS from December 2004 until her eventual escape in May 2005, be restrained, confined and surveilled against her will, directly, and indirectly by physical force, threats, torture and intimidation.

130.  Such illegal restraint of Plaintiff JIANG at the hands of DEFENDANTS was the actual and proximate cause of substantial injuries to Plaintiff, including, but not limited to pain and suffering, humiliation, emotional distress, loss of freedom, loss of enjoyment of life, and the deprivation of Plaintiff's fundamental human rights.

131.  For Plaintiff's false imprisonment, DEFENDANTS, and each of them, jointly and severally, are liable to Plaintiff in an amount not less than One Million Dollars ($1,000,000.00).

132.  DEFENDANTS, and each of them, jointly and severally, because of their extreme, outrageous, willful and malicious conduct, are further liable to Plaintiff for punitive damages in an amount not less than One Million Dollars ($1,000,000.00).

TENTH CAUSE OF ACTION<br>(Negligence)

133.  Plaintiff incorporates paragraphs 1 through 132 above as if fully set forth herein.

134.  If it is determined that DEFENDANTS, or any of them, did not have the requisite knowledge or intent for liability premised on the claims above, it is hereby specifically alleged that DEFENDANTS and each of them had a duty to Plaintiff to protect Plaintiff from being battered, assaulted, imprisoned, defrauded, and trafficked into peonage by other defendants and third parties, whether or not such third parties are named defendants herein.

135.  It is further alleged that DEFENDANTS, and each of them, by their own negligence, breached the duty they owed to Plaintiff by allowing such defendants and third parties to batter, assault, imprison, defraud and traffic Plaintiff into indentured servitude.

136.  As an actual and proximate cause of DEFENDANTS' negligence, and each of them,

Plaintiff has suffered substantial economic and non-economic injuries, including but not limited to pain and suffering, humiliation, emotional distress, loss of freedom, loss of enjoyment of life, and the deprivation of Plaintiff's fundamental human rights.

137.   DEFENDANTS, and each of them, are liable to Plaintiff, jointly and severally, in an amount of not less than One Million Dollars ($1,000,000.00) for their negligence.

PRAYER FOR RELIEF:

Accordingly, Plaintiff JIANG prays for the following relief:

A. That DEFENDANTS, jointly and severally, pay Plaintiff general compensatory damages in an amount of no less than One Million Dollars ($1,000,000.00) for the pain and suffering, humiliation, emotional distress, loss of freedom, loss of enjoyment of life and the deprivation of Plaintiff's fundamental human rights for DEFENDANTS jointly, knowingly and willfully participating in, facilitating, conspiring and aiding and abetting, directly and indirectly, in the recruitment, harboring, transportation and the ultimate peonage of Plaintiff JIANG, and for DEFENDANTS' fraud, frequent assaults and batteries and the false imprisonment of Plaintiff.

B. That DEFENDANTS, jointly and severally, pay Plaintiff punitive damages in the amount of One Million Dollars ($1,000,000.00) for their intentional, willful and malicious acts of recruiting, harboring and transporting Plaintiff JIANG and subjecting Plaintiff JIANG to a life of involuntary servitude at the hands of DEFENDANTS, and for DEFENDANTS' fraud, frequent assaults and batteries and the false imprisonment of Plaintiff.

C. That DEFENDANTS, jointly and severally, pay Plaintiff JIANG compensation for unpaid wages and breach of contract in an amount no less than Sixteen Thousand Seven Hundred Eighty Seven Dollars ($16,787.00).

D. That DEFENDANTS, jointly and severally, pay Plaintiff an equal amount of such unpaid wages and contract damages as liquidated damages;

E.  That DEFENDANTS, jointly and severally, pay Plaintiff reasonable attorney's fees and costs of this action.

Submitted this 23rd day of August, 2006.

/s/ Mark B. Hanson

MARK B. HANSON
Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738, P.O. Box 10,000
Saipan, MP 96950

Attorney for Plaintiff JIANG LI RONG

VERIFICATION OF COMPLAINT

I, JIANG LI RONG, hereby certify that the forgoing complaint has been translated to me from English into my native language, Mandarin Chinese, and that I have read and understood the allegations and claims made herein and that I consent to be a party plaintiff herein.  I further certify that the factual statements made in the numbered paragraphs herein are true and correct to the best of my knowledge and belief and that I verified the accuracy of the above Complaint this 23rd day of August, 2006.

/s/ Jiang Li Rong

JIANG LI RONG
Plaintiff

I, Dennis Tse, hereby certify that I speak and read Mandarin Chinese fluently and that I have translated the foregoing Verified Complaint to Plaintiff Jiang Li Rong clearly and accurately to the best of my abilities on this 23rd day of August, 2006.

/s/ Dennis Tse

DENNIS TSE
Translator

Page 23 of  24

DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 58(b), Plaintiff hereby demands a trial by jury on all of Plaintiff's causes of actions and claims for relief stated in the above-Verified Complaint.

DATED this 23rd day of August, 2006.

/s/ Mark B. Hanson

MARK B. HANSON

Second Floor, Lizama Building
Beach Road, Garapan
PMB 738 P.O. Box 10,000
Saipan, Mariana Islands 96950

Attorney for Plaintiff JIANG LI RONG