Law Office of G. Anthony Long
P. O. Box 504970, Beach Road
San Jose, Saipan, MP 96950
Tel. No. (670) 235-4802
Fax. No. (670) 235-4801

Attorney for Defendant Hong Kong Entertainment (Overseas) Investments, Ltd., and Alfred Yue

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JIANG LI RONG | CIVIL ACTION NO. 05-0048 |
| Plaintiff | |
| v. | |
| HONG KONG ENTERTAINMENT (OVERSEAS) INVESTMENTS LTD NEW ECHO ENTERTAINMENT, INC ALFRED YUE, ZHANG JIAN HUA ZHANG DE MING, ZHANG JIAN GANG, LI LI, LI FENG and Does 1 - 10 | |
| Defendant. | OPPOSITION TO CENTURY INSURANCE'S SUMMARY JUDGMENT MOTION |
| HONG KONG ENTERTAINMENT (OVERSEAS) INVESTMENTS, LTD. | |
| Third Party Plaintiff | |
| v. | |
| CENTURY INSURANCE COMPANY, INC. | |
| Third Party Defendant | |

# FACTS

Plaintiff filed a First Amended Verified Complaint ("Complaint") on or about August 25, 2006. On February 14, 2007 Hong Kong Entertainment (Overseas) Investments, Ltd., doing business as Tinian Dynasty Hotel and Casino ("Tinian Casino") tendered defense of this action to Century Insurance Company, Ltd., ("Century"). *See* February 19, 2007 Letter from Century attached hereto as Exhibit A. By letter dated February 19, 2007, Century denied coverage. *Id*.

## I. THE COVERAGE TINIAN DYNASTY PURCHASED FROM CENTURY OBLIGATES CENTURY TO DEFEND AGAINST THE *JIANG* COMPLAINT

### A. STANDARD OF ANALYZING THE DUTY TO DEFEND

The duty or obligation of an insurer to defend its insured is not a product of common law. *National Fire Union*, 2003 Guam 19 at ¶ 16. The duty is purely a statutory or contractual creation. *Id*. Thus, the existence of the duty is made by first examining the applicable statute or insurance policy and the allegation in the underlying lawsuit. *See Id*, 2003 Guam 19 at ¶¶ 16 - 18. The policy will be enforced according to its terms by reading it as a whole. *Ito*, 4 N.M.I. at 68. An exception to this rule exists where there is an ambiguity in the policy, in which case the ambiguous term is interpreted in favor of coverage. *Id*. *Klamath Pacific Corporation v. Reliance Insurance Co.*, 950 P.2d 909, 913 - 914 (Or.App.,1997). *See also Wabol v. Camacho,* 4 N.M.I. 388, 391 n. 4 (1996); Restatement (Second) Contract § 206. If the policy or applicable statute provides for a duty to defend, the issue then becomes whether the underlying lawsuit triggers the duty.

In determining whether the duty to defend exists in a particular case, it must be remembered that the duty of an insurer to defend is very broad and is far broader than its duty to pay. *Electronics for Imaging, Inc. v. Atlantic Mutual Insurance Co.,* 2006 WL 3716481 at 2 (N.D.Cal. 2006). Indeed, an insurer's duty and the duty to defend are separate and distinct meaning that the duty to defend is independent of, and not limited by, its duty to pay. *Sentinel Insurance v. First Insurance of Hawaii,* 875 P.2d 894 ( Hawai'i 1994). The duty to defend is only limited or found not to exist when there is not any possibility of coverage based on the complaint filed against the insured. *Id*. Thus, as long as the complaint contains language creating the potential coverage under an insurance policy, the insurer must defend the action against its insured. *Montrose Chemical Corporation of California v. Superior Court* , 861 P.2d 1153, 1158, 24 Cal. Rptr 2d. 467, 472  (Cal. 1993). If any of the allegations pertain to conduct that could be covered by the insurance policy, then the insurer must defend the entire action. *Id*. The question regarding the complaint therefore is whether the facts alleged in the underlying complaint can be interpreted reasonably as including any conduct within the coverage of the insurance policy. *Id*. This means that if a complaint alleges some conduct that may be covered, and some that would not be covered, then the insurer has a duty to defend. Additionally, any ambiguities in the complaint as to whether the allegations could be covered is resolved in favor of the insured. *Id*. If the allegations in the complaint are ambiguous or unclear, but may be interpreted reasonably to include an incident within the coverage of the policy, then the duty to defend exists. *Id*.

An insurer moving for summary judgment on its duty to defend has a heavy burden of proof as the obligation to defend is broader than the duty to pay claims and arises wherever there

is the mere potential for coverage. *See Tri-S Corporation v. Western World Insurance Co.*, 135 P.3d 82, 97 (Hawai'i, 2006). In other words, the duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists, the insurer owes the insured a defense. *Id*. All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured. *Id.*

The Workers Compensation, Umbrella and Public Liability policies Century issued to Tinian Dynasty, which are the policies applicable to this case, expressly provide for the duty to defend. The issue thus becomes whether the *Jiang* complaint triggers the duty to defend under the policies. In moving for summary judgment, Century takes the position that determination of coverage is made by looking only at the four corners of the complaint together with the insurance policy provisions. In other words, materials or facts outside of the complaint are not considered in making the coverage determination. An analysis of the policy language and the underlying complaint demonstrate that Century possesses the duty to defend.

**B.    THE DUTY TO DEFEND EXISTS UNDER THE WORKERS COMPENSATION POLICY**

The introductory provision of the Workers Compensation Policy establishes that it covers "personal injuries sustained by employees." Then paragraph 3 of the Workers Compensation Policy Century expressly promises that it will defend Tinian Dynasty against:

> **...any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits or other proceedings, allegations, or demands or wholly groundless, false or fraudulent**.(emphasis added)

The Commonwealth Workers Compensation Law defines "Employer" as:

...any person, corporate or unincorporate, public or private, who employs the services of others in return for wages, salaries or other remuneration and includes the legal representative of a deceased employer.

4 CMC § 9302(m). The term "Employee" is defined as:

...any person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed.

4 CMC § 9302(l).

Jiang alleges she was employed by Tinian Dynasty pursuant to a contract. Complaint at ¶¶ 40 - 43. The complaint also alleges that all defendants are agents of each other. Complaint at ¶ 19. Jiang further alleges that she suffered personal injury and physical harm while employed by Tinian Dynasty, arising from . Complaint ¶¶ 25 - 137. Thus, pursuant to paragraph 3 of the Worker's Compensation Policy, Century has the duty to defend against Jiang's claims even if her claims are "wholly groundless, false or fraudulent."

**C.   THE DUTY TO DEFEND EXISTS UNDER THE UMBRELLA POLICY**

With respect to evaluating the duty to defend under the insurance policy, courts first determine whether the policy defined the term at issue. *See Clinical Research Institute of Southern Oregon, P.C. , v. Kemper Insurance Companies*, 84 P.3d 147,150- 153  (Or.App. 2004). If the policy does not define the terms at issue, courts look to the plain meaning of the term. *Id.*  If the policy defines the terms at issue and there are two or more plausible interpretations of the term, then courts consider whether those interpretations are reasonable. *Id.*

If more than one interpretation of the policy is reasonable then the policy provision is ambiguous and is construed against the insurer. *Id. See also Wabol ,*, 4 N.M.I. at 391 n. 4; Restatement (Second) Contract § 206 .

The Policy Declaration for the Umbrella Policy expressly provides that Century indemnifies Tinian Dynasty for any "occurrence."  Section 7 of the Umbrella Policy then defines the term "occurrence" as an "event or series of events... which results in Personal Injury" which is neither expected nor intended from the standpoint of the insured . Section 10 of the Umbrella Policy defines "personal injury" as including shock, fright, mental anguish, mental injury, humiliation, and invasion of privacy. Thus, to the extent any claim in the *Jiang* lawsuit is conceivably deemed to allege an unintended or unexpected personal injury,  Century possessed the duty to defend. *Tri-S Corporation*, 135 P.3d at 97.  The *Jiang* complaints satisfies this criteria.

The policy defines personal injury as including shock, fright, mental anguish, mental injury, and humiliation which is neither intended nor expected by Tinian Dynasty.  To this extent, the tenth claim for relief alleges defendants, which includes Tinian Dynasty, acted negligently and which negligence resulted in plaintiff, among other things, suffering pain and suffering, humiliation, emotional distress, loss of freedom, and loss of enjoyment of life. Complaint at ¶ 136.

Also,  the eighth claim for relief alleges intentional infliction of emotional distress. A claim of intentional infliction of emotional distress requires "proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or **reckless**;  (3) it must cause emotional distress; and (4) the distress must be severe." *Charfauros v. Board of*

*Elections*, 1998 MP 16 at ¶ 62, 5 N.M.I. 188, 201 (1998). Indeed, *Charfauros* expressly recognizes and holds that to state a claim for intentional infliction of emotional distress the conduct complained of must be either intentional or reckless. 1998 MP 16 at ¶ 62, 5 N.M.I. at 201. Regarding this element, *Charfauros* ruled as follows:

> Appellee's Brief to this Court omitted the word "reckless" from within its quote from this case. See Appellee's Brief, p. 6. **The facts of this case appear to support at least an inference of recklessness on the part of the members of the Board of Elections**.

*Id* at n. 12 (emphasis added). This establishes that the term "reckless" is not the same as "intentional." This position is supported or substantiated by Restatement, Torts,(Second) § 500 which defines reckless. Section 500 provides as follows:

> [t]he actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Most importantly, § 500 Comment f contrasts intentional conduct and reckless conduct as follows:

> [r]eckless misconduct differs from intentional wrongdoing in a very important particular. **While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it.** It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.(Emphasis added).

Given that a claim for intentional infliction of emotional distress can succeed on the basis of reckless conduct, as well as intentional conduct, Century possesses the duty to defend based on

the claim for intentional infliction of emotional distress given Jiang's eighth and tenth claims for relief. *See American Continental Insurance Co. v. Pooya,* 666 A.2d 1193, 1199 (D.C.,1995)["Since recklessness is sufficient to establish liability for intentional infliction of emotional distress, and the insurance policy does not exclude coverage for reckless acts, there exists the potential for liability within the policy coverage under the alleged tort of intentional infliction of emotional distress."]

The policy in *Tri S Corporation* excluded from coverage injuries which were "expected or intended" by the insured. *Id*. While the underlying complaint contained language that the insured acted intentionally or expected the result, the complaint also contained assertions of non-intentional misconduct. *Id*. As a result, the insurer had the duty to defend. *Id*.

In addition to the "occurrence" coverage, paragraph 6 of the Conditions to the Umbrella Policy provides, in part, as follows:

> [t]he insured shall give notice to the Company of **any** inquiry, loss or damage as soon as possible after it comes to the knowledge of the insured or of the insured's representative. The insured shall forward to the Company forthwith after receipt thereof every written notice or information as to any verbal notice of claim, and shall also give notice to the Company immediately as soon as the receives knowledge of any proceedings....The insured shall give all necessary information and assistance and all documents **to enable the Company to investigate, settle or resist any claim as the Company may think fit**. (emphasis added).

This paragraph expressly provides that Century will "investigate, settle or resist any claim." The Umbrella Policy does not define the term "claim." Accordingly, the word is construed in relation to its plain meaning. *Ito,* 4 N.M.I. at 68. *See Clinical Research Institute of Southern Oregon,* 84 P.3d at 150- 153. The word claim, when not defined in an insurance policy is broadly defined and is generally deemed to be a demand of a right or alleged right accompanied by a demand for

payment of money. *Pinckney Community Schools v. Continental Casualty Co.* 540 N.W.2d 748, 752 - 755 (Mich.App. 1995). Given that the Umbrella Policy does not define the term "claim" and the broad definition of the term "claim" when the word is undefined in the insurance policy, it can not be disputed that the *Jiang* lawsuit, and more specifically, each claim for relief alleged in the lawsuit is a "claim." *See Id; National Casualty Co. v. Great Southwest Fire Insurance Co.*, 833 P.2d 741, 744-45 (Colo.1992); *City of Marion v. National Casualty Co.*, 431 N.W.2d 370, 373 - 374 (Iowa 1988). Thus, since paragraph 6 obligates Century to "**resist any claim**", it possess the duty to defend the *Jiang* lawsuit. *See Valley Improvement Association, Inc. v. U.S. Fidelity & Guaranty Corporation*, 129 F.3d 1108, 1119 (10th Cir. 1997)[Referring to resisting a claim as having the obligation to raise defenses and defend]

It should be noted that while paragraph 6 applies to "any claim" without limitation, paragraph 7 Conditions Section contain language purportedly limiting Century's obligation to defend. The relevant provision of paragraph 7 provides that Century "shall be entitled to use the name of the Insured for all purposes in connection with this Policy including bringing, defending, enforcing or settling of legal proceedings for the benefit of the Company in connection with any one claim or number of claims arising out of any one cause for indemnity against liability as defined in this Policy." Noticeably, paragraph 7 does not contain any language stating that it qualifies the broad language in paragraph 6 or that it supersedes or controls not withstanding paragraph 6 or any other provision regarding its duty to defend. The absence of such language results in the policy containing two provisions concerning Century's duty to defend. This renders the policy ambiguous in relation to Century's duty to defend. Under this circumstance, the ambiguity must be resolved in Tinian Dynasty's favor. *Ito*, 4 N.M.I. at 68. *See Massachusetts*

*Bay Insurance Co. v. Ferraiolo Construction Co.*, 584 A.2d 608, 609 (Me.1990)[ Any ambiguity in the insurance policy must be resolved in favor of finding a duty to defend]. Nevertheless, even if it were concluded that no ambiguity exists in the policy and paragraph 7 alone controls Century's duty to defend, then the duty still exists as certain claims in the *Jiang* lawsuit fall within the coverage of paragraph 7.

As previously noted, paragraph 7 purports to limit the duty to defend a claim or claims "arising out of any one cause for indemnity against liability as defined" in the policy. This necessitates determining whether any claim alleged in the *Jiang* lawsuit has the potential or possibility of being subject to coverage, regardless of how remote. *See Tri-S Corporation*, 135 P.3d at 97. The *Jiang* lawsuit triggers Century's duty to defend within the terms of paragraph 7.

Nevertheless, to the extent coverage is limited to "bodily injury as Century claims, then a reading of the Complaint shows that Jiang alleges bodily injury.

### D. THE DUTY TO DEFEND EXISTS UNDER THE PUBLIC LIABILITY POLICY

The Conditions section of the Public Liability Policy contains a paragraph 6 identical to paragraph 6 in the Umbrella Policy. For the same reasons articulated in connection with the Umbrella Policy, paragraph 6 of the Public Liability Policy obligates Century to defend the *Jiang* lawsuit.

Paragraph 7 of the Public Liability Policy is also identical to paragraph 7 of the Umbrella Policy. Likewise, to the extent, paragraphs 6 and 7 result in an ambiguity concerning the duty to defend, the ambiguity must be resolved in favor of Tinian Dynasty. In any event, even if it were concluded that an ambiguity does not exist and paragraph 7 alone controls Century's duty to

defend, then the duty still exists.

Paragraph 7 purports to limit the duty to defend to claim or claims "arising out of any one cause for indemnity against liability as defined" in the policy. This necessitates determining whether any claim alleged in the *Jiang* lawsuit has the potential or possibility of being subject to coverage, regardless of how remote. *See Tri-S Corporation*, 135 P.3d at 97. The *Jiang* lawsuit triggers Century's duty to defend within the terms of paragraph 7. Unlike the Umbrella Policy, the Public Liability Policy does not insure against an occurrence. Instead, it purports to cover only "accidental bodily injury" and "accidental loss of or accidental damage to property.". The policy does not, however, define the terms "accidental bodily injury" or "accidental loss of or accidental damage to property." Despite the policy language concerning "accidental bodily injury", the policy contains a Professional Liability Exclusion Clause which states that the policy does not apply to bodily injury, property damage, personal liability or advertising injury. The exclusion then defines personal injury as injury other than bodily injury arising out of certain offenses. If the Public Liability Policy does not apply to personal injury, as Century claims, then it would not have been necessary to include a specific clause excluding certain personal injury claims. To this extent, the exclusion clause creates an ambiguity as to whether the policy covers personal injury or advertising claims not based on the rendering or failure to render professional services and/or professional advice." This ambiguity is construed against Century and in favor of Tinian Dynasty, *Ito*. 4 N.M.I. at 68, which means that the policy covers personal injury and advertising injury as defined by the exclusion which arise in circumstances other than the rendering or failure to render professional services and advice.

## II. AMBIGUITY REGARDING COVERAGE UNDER THE PUBLIC LIABILITY POLICY IMPOSES THE DUTY TO DEFEND UPON CENTURY

An ambiguity in an insurance contract is construed in favor of coverage. *Ito*, 4 N.M.I. at 68. A patent ambiguity exists in a contract when the document contains facially inconsistent provisions. *Riley v. Public Schools System*, 4 N.M.I. 85, 89 (1994). A contract is latently ambiguous when the contract language shows potential reasonable differing meanings. *Id*. In this case, the Professional Liability Endorsement to the Public Liability Policy renders the policy ambiguous as to whether it applies to personal injury or advertising injury.

Century contends that the Public Liability Policy, by its terms, applies only to "accidental bodily injury" or "accidental loss of or accidental damage to property." If this is true, then it was unnecessary to add an endorsement excluding personal injury and advertising injury for failure of or failure to render professional services or advise. Indeed, if the policy was limited to only bodily injury or accidental property loss or damage, then it would not be necessary to add an endorsement excluding coverage for a particular type of personal injury or advertising injury. Century adding such an exclusion strongly suggest or indicates that the PLP applies to personal injury and advertising injury not excluded by the endorsement. At a minimum, this creates an ambiguity regarding the scope of coverage for the Public Liability Policy.

## III. FACTUAL QUESTIONS PRECLUDE SUMMARY JUDGMENT ON THE DUTY TO DEFEND UNDER THE WORKER'S COMPENSATION POLICY.

Whether employer-employee relationship exists is a factual question. *Claim of Bailey,* 517 N.Y.S.2d 821, N.Y.A.D. 1987). This determination is made by considering a variety of factors, none of which are dispositive, based on the totality of the circumstances. *See DiMaggio*

*v. Johnston Audio/D & M Sound*, 19 S.W.3d 185 (Mo. App. 2000). Moreover, whether an injury to an employee arose out of and in the course of employment is essentially a factual determination *Titterington v. Brooke Insurance*, 89 P.3d 643 (Kan.,2004); *Phillips v. A & H Construction Co., Inc.*, 2004 WL 1057645 (Tenn.,2004); *Vill v. Industrial Commission*, 2004 WL 1768904 (Ill.App.2004) *Pratt v. Morris Roofing, Inc.*, 2004 WL 502903 (S.C. 2004); *Luttrell v. Clearwater County Sheriff's Office*, 2004 WL 1632108 (Idaho 2004); *Greenberg News Network v. Frederick*, 2003 WL 21961454 (Ind.App. 2003); *Morrow v. Baby Dolls*, 84 P.3d 112 (Okla.Civ.App.Div. 2003); *Legault v. Kraft Foods Co.*, 168 N.Y.S.2d 626 (N.Y.A.D. 1957). Although Tinian Dynasty denies Jiang was an employee, this is an unresolved factual issue at this time which precludes summary judgment on the duty to defend under the Worker's Compensation Policy.

### IV. CENTURY IS NOT ENTITLED TO SUMMARY JUDGMENT RELIEVING IT OF THE DUTY TO PAY

An insurer's duty to pay runs to claims that are actually covered by the policy. The duty to indemnify or pay is triggered only if coverage actually exists. *In re Feature Realty Litigation* 2006 WL 3692649 at 5 (E.D.Wash. 2006). However, when an insurer moves for summary judgment regarding its duty to pay, it is required to disprove any possibility that its insured might be liable for a claim asserted in the underlying lawsuits. Instead, without reference to what the eventual outcome of the underlying lawsuits might actually be, the insurer must establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policy and the consequent entitlement to the entry of judgment as

a matter of law. *Tri-S Corporation*, 135 P.3d at 97. Century could not and did not satisfy this burden of proof regarding compensatory or non punitive damages[1].

As shown above, the *Jiang* complaint contains claims which constitute an occurrence under the Umbrella Policy. This circumstance precludes summary judgment on Century's obligation to pay that claim. See *In re Feature Realty Litigation*, 2006 WL 3692649 at 15. Thus, factual questions existed as to whether Century has the obligation to pay claims and such issues can not be settled until resolution or conclusion of *Jiang's* underlying lawsuit. Indeed, the actual existence of coverage and the duty to indemnify depends on the true state of facts surrounding the underlying loss or injury which are generally established at trial or upon settlement. *Travelers Insurance Co. v. Waltham Industrial Laboratories Corporation*, 883 F.2d 1092, 1099-1100 (1st Cir.1989).

The factual issues concerning Century's obligation to pay can not be resolved until they are viewed in light of the settled facts established at trial or upon settlement. Since such settled facts were not before the court in connection with Century's summary judgment motion, granting summary judgment on Century's duty to pay was improper.

## V. 4 CMC § 7505(b) DOES NOT BAR THE DUTY TO PAY

An insurer's duty to pay runs to claims that are actually covered by the policy. *Buss v. Superior Court,* 65 Cal.Rptr.2d 366, 373, 939 P.2d 766, **773** (1997).

Century contends that all of the claims in the Jiang complaint are intentional torts and 4

---

[1] Tinian Dynasty agrees that the polices exclude punitive damages and doe not content that punitive damages are covered by the policies. Furthermore, Tinian Dynasty does not contend the automobile policies provide coverage to Jiang' claims.

CMC § 7505(b), precludes it from paying damages for intentional claims. *See* Century's Brief at 24 - 27. That argument misconstrues Commonwealth law as well as the *Jiang* complaint.

Section 7505(b) is almost identical to California Insurance Code § 533[2]. is almost identical to § 7505(b). California Insurance Code § 533 represents a public policy of not allowing an insurance company to pay for acts of an insured which are deemed willful. *See Shell Oil Co. v. Wintherthur Swiss Insurance Co.*, 12 Cal.App.4th 715, 741, 15 Cal.Rptr.2d 815, 831 (1993). For an act to be "willful" under section 533 means something more than intentionally doing an act constituting ordinary negligence. *Id.* To cover within § 533's statutory exclusion the acts must be done with the preconceived design to injure. *Id.* This means that § 533 does not bar payment for reckless conduct or negligence. See *Id*, 15 Cal.Rptr.2d at 832. Essentially,

> .... section 533 prohibits indemnification of more than just intentional acts that are subjectively desired to cause harm and acts that are intentional, wrongful, and necessarily harmful regardless of subjective intent. A "wilful act" under section 533 must also include a deliberate, liability-producing act that the individual, before acting, expected to cause harm. Conduct for which the law imposes liability, and which is expected or intended to result in damage, must be considered wrongful and willful. Therefore, section 533 precludes indemnification for liability arising from deliberate conduct that the insured expected or intended to cause damage.

*Id*, 15 Cal.Rptr.2d at 833.

Reckless conduct is not the same as intentional or willful conduct. See *Charfauros,* 1998 MP 16 at ¶ 62 n.12, 5 N.M.I. at 201 n.12; Restatement "Torts" (Second) § 500 comment f.

---

[2] California Insurance Code § 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but **he** is not exonerated by the negligence of the insured, or of the insured's agents or others." (emphasis added). Section 7505(b) provides that "An insurer is not liable for a loss caused by the willful act of the insured; but **the insurer** is not exonerated by the negligence of the insured or of the insured's agents or others." (emphasis added). The only difference is that the Commonwealth statute uses the word "insurer" while the California statute uses the word "he".

Reckless conduct is sufficient to prove Jiang's claim for intentional infliction for emotional distress. *Jiang* also alleges negligence in her tenth claim for relief which is not willful or intentional conduct. Thus, 7505(b) does not preempt Century's duty to pay. *See Shell Oil Co. v. Wintherthur Swiss Insurance Co.*, 12 Cal.App.4th at 742, 15 Cal.Rptr.2d at 832.

VI. **THE SUMMARY JUDGMENT MOTION SHOULD BE STAYED PENDING RESOLUTION OF THE FEDERAL LAWSUIT**

When determination of an insurer's duty under an insurance policy turns upon factual issues to be litigated in the underlying action, an insurer's declaratory action should be stayed pending resolution of the underlying action. *Montrose Chemical Corporation of California v. Superior Court*, 861 P.2d 1153,1162, 24 Cal. Rptr 2d. 467, 476 (Cal. 1993). This eliminates any risk of prejudice to the insured. *Id*. This principle is applicable to the instant case.

## CONCLUSION

Century uses adverbs, adjectives, omissions, and misdirection in an effort to create the illusion that it does not possess the duty to defend or the duty to pay in connection with the *Jiang* complaint. An analysis of the governing legal principles, Century's policies and the *Jiang* complaint reveals that Century possesses the duty to defend or alternatively factual issues preclude summary judgment. The existence of the duty also exists or alternatively can not be conclusively determined based on the record.

    Law Office of G. Anthony Long

    By:_____/s/_____
       G. Anthony Long

EXHIBIT A

**STEVEN P. PIXLEY**
Attorney at Law
Second Floor, CIC Centre, Beach Road, Garapan
Post Office Box 7757 S.V.R.B.
Saipan, M. P. 96950, U.S.A
Telephone Nos: (670) 233-2898 / 233-5175 / 235-3128
Facsimile No. (670) 233-4716
E-Mail: sppixley@aol.com

**FAX-IN**
2/20/07

*Via Facsimile (235-4801) & Mail*

February 19, 2007

G. Anthony Long, Esq.
Attorney at Law
Post Office Box 504970
Saipan, M.P. 96950

Re:  Jiang Li Rong v. Hong Kong Entertainment
     (Overseas) Investment, Inc., et. al.
     Civil Action No. 05-0048

Dear Anthony:

I am general counsel for Century Insurance Company, Ltd. On February 14, 2007, you tendered the defense of the above-captioned civil action to Century on behalf of the Tinian Dynasty.

Following a review of this matter, it does not appear that Century insured the named defendants for claims alleged in the complaint. I understand that Century did issue a labor bond in favor of New Echo Entertainment, Inc. which does not appear to cover claims alleged in this complaint.

Notwithstanding the foregoing initial analysis, please contact me immediately if you believe that this analysis is not correct or if you have evidence supporting that Century has a duty to defend this action. I am also available to meet with you to discuss this matter.

Sincerely,

STEVEN P. PIXLEY
Attorney at Law

cc:  Domingo E. Ocampo
     Century Insurance Company, Ltd.

SPP/svc

---

Admitted to practice law in the State of North Carolina; The Commonwealth of Virginia;
The Commonwealth of the Northern Mariana Islands; and The Federated States of Micronesia