1 MARK B. HANSON, ESQ.
Second Floor, Macaranas Building
2 Beach Road, Garapan
PMB 738 P.O. Box 10,000
3 Saipan, Mariana Islands 96950
Telephone: (670) 233-8600
4 Facsimile: (670) 233-5262
E-mail: mark@saipanlaw.com

Attorney for Plaintiff Jiang Li Rong

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JIANG LI RONG,<br><br>    Plaintiff,<br><br>vs.<br><br>HONG KONG ENTERTAINMENT (OVERSEAS) INVESTMENT, LTD., NEW ECHO ENTERTAINMENT, INC., ALFRED YUE, and ZHANG JIAN HUA,<br><br>    Defendants. | CASE NO. 05-00048<br><br>OPPOSITION TO HONG KONG ENTERTAINMENT'S AND YUE'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT ON THE FIRST CLAIM FOR RELIEF<br><br>Date: April 10, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Alex R. Munson |

COMES NOW, JIANG LI RONG with the following Opposition to Defendants Hong Kong Entertainment (Overseas) Investment, Ltd.'s and Alfred Yue's (collectively "HKE" herein) Motion to Dismiss or Alternatively for Summary Judgement on the First Claim for Relief. For the reasons stated herein, HKE's Motion should be denied.

HKE's "FACTS"

Initially, Ms. Jiang takes issue with HKE's "Statement of Undisputed Facts" filed concurrently with its present Motion. It is Ms. Jiang's allegations that she was jointly employed by all named defendants as that term is used and understood under the Fair Labor Standards Act and the CNMI

Minimum Wage and Hour Act. *See* First Amended Verified Complaint ("FAC") ¶¶ 9-12, 19, 21, 68-95. Further, Ms. Jiang alleges that she was the nanny for Zhang Jian Hua's and Alfred Yue's infant child and also was required, on occasion, to perform cleaning services for Zhang, personally, and for Defendant New Echo Entertainment — a company incorporated by Yue and in fact owned by Zhang and Yue. *See* FAC ¶¶ 26, 27, 33, and 36.

Finally, HKE mis-cites the sections of the Trafficking Victims Protection Act (as amended) it violated. Ms. Jiang was trafficked from China to the Commonwealth of the Northern Mariana Islands in violation of 18 U.S.C. §§ 1589 and 1590. *See* FAC ¶¶ 61 - 67.

Ms. Jiang would note that none of HKE's Statement of Undisputed Fact are supported by any evidence or even citation to the source of the purported "fact."

## STANDARD FOR MOTION TO DISMISS

For purposes of a Fed. R. Civ. P. 12(b)(6) motion to dismiss, review is limited to the contents of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *See American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 918 (9th Cir. 2002). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See Van Buskirk*, 284 F.3d at 980.

> [T]he complaint, and other relief-claiming pleadings need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.

5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 (1990) (citations omitted).

## HKE's MOTION TO DISMISS UNTIMELY

On January 24, 2006, over two years ago, HKE filed a Rule 12 motion to dismiss various claims in Ms. Jiang's Verified Complaint, including her First Claim for Relief attacked by the present Motion. HKE did not include in that motion the arguments advanced in the present Rule 12 motion. Fed. R. Civ. P. 12(g) is clear that the present Rule 12 motion to dismiss should have been consolidate with HKE's January 2006 motion because it does not fall within an exception contained in Rule 12(h)(2). Accordingly, the proper motion here is one for partial summary judgment under Rule 56(a) and the standards applicable to such a motion.

## STANDARD FOR PARTIAL SUMMARY JUDGMENT

Summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 3548, 91 L.Ed. 2d 265 (1986). The burden of establishing the nonexistence of a genuine issue is on the party moving for summary judgement. Here, the burden rests upon HKE. *Id*.

In evaluating the merits of a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) (citation omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id*. The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249; *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999)(*en banc*).

Finally, where a material factual issue exists for trial, summary judgment inappropriate and

should be denied. *Meade v. Cedarapids, Inc.,* 164 F.3d 1218, 1221(9th Cir. 1999). In other words, if there is sufficient evidence which enable reasonable jurors to differ, summary judgment should be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249-250.

### HKE'S "COMMERCE CLAUSE" ARGUMENT MUST FAIL AS A MATTER OF LAW

In its Motion, HKE's argument is basically that: (1) the provisions of the Trafficking Victims Protection Act of 2000, Public Law 106-386 ("TVPA") and the Trafficking Victims Protection Reauthorization Act of 2003, Public Law 108-193 ("TVPRA") were passed pursuant to the United States Congress' powers under Commerce Clause of the Constitution, art. I, § 8, cl. 3 ("Commerce Clause") (The Congress shall have Power ... [t]o regulate Commerce with foreign Nations, and among several States...."); and (2) the Commerce Clause was not expressly or impliedly adopted in the *Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America*, 48 U.S.C. § 1801 ("Covenant"); (3) so, therefore, *any* legislation passed by Congress pursuant solely to its powers under the Commerce Clause are inapplicable either to act or omissions occurring in the Commonwealth of the Northern Mariana Islands ("CNMI") or to actions brought in any court located in CNMI, including this Federal District Court (though plaintiff would note that HKE is unclear as to which argument applies or whether both apply).[1]

HKE's position is, simply, wrong.

First, at issue in this case is the efficacy of 18 U.S.C. §§ 1589 and 1590. Those sections of the TVPA are based on Congress' powers pursuant to the Thirteenth Amendment, not pursuant to the Commerce Clause.

---

[1] As discussed below, HKE's discussion of a "jurisdiction hook" element of a claim is really only indicative of the source of the Congressional act, and, so the argument goes, determines the efficacy of that particular act within the Commonwealth, not of the subject matter jurisdiction of this Court which is based on federal subject matter jurisdiction — 28 U.S.C. § 1331.

Second, acts of Congress based on the Commerce Clause are applicable in the CNMI so long as the act does not modify a "fundamental provision" of the Covenant. Here, HKE fails to carry its burden to show that 18 U.S.C. §§ 1589, 1590 of the TVPA or 18 U.S.C. § 1595 of the TVPRA modify some fundamental provision of the Covenant, and, therefore, its motion must fail.

Finally, even if the CNMI were not, *per se*, subject to acts of Congress passed pursuant to the Commerce Clause, Congress has the power to legislate extraterritorially, applying Commerce Clause based legislation to acts or omissions occurring wholly within foreign countries (also not, *per se*, subject to the Commerce Clause). The extraterritorial effect should be express, and here we have an express application of the TVPA and the TVPRA to the CNMI. The subject matter jurisdiction of this Federal court is not at issue; the question of whether Plaintiff has stated a claim under the TVPA to acts occurring in China and in the CNMI must be answered in the affirmative. HKE's motion should be denied.

1. <u>TVPA and TVPRA expressly apply to the CNMI</u>.

Plaintiff would first note that the TVPA is the particular act at issue with regard to HKE's motion.[2] The TVPA expressly includes within its scope of applicability the Commonwealth of the Northern Mariana Islands ("CNMI"). TVPA, § 103(10) and (12) (CNMI included within definition of "State" and "United States" as used in TVPA).

Further, Congress has the power to criminalize by statute acts committed wholly extra-

---

[2] HKE challenges the efficacy of 18 U.S.C. §§ 1589 and 1590 in the CNMI. *See, e.g.*, HKE Memo at 10 ("Federal jurisdiction is lacking with respect to 18 U.S.C. §§ 1589 and 1590. This negates the civil remedy provided by 18 U.S.C. §§ 1595 [sic]."). Both of those sections were provided for in the TVPA. The TVPRA was enacted to authorize further appropriations for the TVPRA and to enhance various provisions of the TVPA. It was the TVPRA that, *inter alia*, provided a private right of action for violations of §§ 1589 and 1590 — the TVPRA did nothing to modify or amend the two previously enacted statutes.

territorially. *See, e.g., United States v. Clark*, 435 F.3d 1100 (9th Cir. 2006) (upholding PROTECT Act crime of sex with a minor while abroad as valid exercise of Congress' powers under Foreign Commerce Clause).

Here, it is axiomatic that Congress had the power to regulate human trafficking extraterritorially and, therefore, Congress' express inclusion of the CNMI within the scope of the TVPA and the TVPRA regardless of the applicability of the Commerce Clause to the CNMI should end this Court's inquiry into the enforceability of the two acts of Congress in the CNMI. Congress had the power to criminalize, and did criminalize, the acts of forced labor in the CNMI and the transportation of persons into forced labor from China to the CNMI.[3]

Moreover, this Court's jurisdiction over Plaintiff's claims is not at issue. There is no doubt that this Court has federal subject matter jurisdiction over the 18 U.S.C. § 1595 claim by virtue of 28 U.S.C. § 1331. *See, e.g., John Roe I v. Bridgestone*, 492 F. Supp. 2d 988, 997 (S.D. Ind. 2007) ("The court has subject matter jurisdiction over these claims based on general federal question jurisdiction, 28 U.S.C. § 1331, regardless of whether plaintiffs have alleged viable claims on the merits."). *See also United States v. Ratigan*, 351 F.3d 957, 960 (9th Cir. 2003) (proof of a jurisdictional fact is separate from a district court's subject-matter jurisdiction). HKE's motion should be denied.

2. <u>Sections 1589 and 1590 of the TVPA are based on Section 2 of the Thirteenth Amendment not on the Commerce Clause.</u>

As the cornerstone of its Commerce Clause argument, HKE cites to the case of *John Roe I v. Bridgestone*, 492 F. Supp. 2d 988, 998 (S.D. Ind. 2007) for the proposition that the §§ 1589 and 1590

---

[3] *See* Covenant § 105: "The United States may enact legislation in accordance with its constitutional processes which will be applicable to the Northern Mariana Islands, but if such legislation cannot also be made applicable to the several States the Northern Mariana Islands must be specifically named therein for it to become effective in the Northern Mariana Islands."

of the TVPA are based on Congress' power under the Commerce Clause. *See* HKE Memo at 4-5. HKE fatally misreads *Bridgestone*.

In *Bridgestone*, the District Court there was considering, *inter alia*, the extra-territorial application of the Thirteenth Amendment to the United States Constitution and of 18 U.S.C. § 1589 of the TVPA. *See Bridgestone*, 492 F. Supp. 2d at 998-1003. The plaintiffs therein where Liberian's working on Liberian rubber plantations owned and operated by Bridgestone and Firestone — United States companies. Plaintiffs brought suit in the United States for forced labor (not sex trafficking) occurring wholly within Liberia.

In arguing to save their Thirteenth Amendment claims, plaintiffs argued that Congress based the provisions of the TVPA on the Thirteenth Amendment when it gave the TVPA "some international reach" therefore suggesting that the Thirteenth Amendment itself could be applied extraterritorially. *Bridgestone*, 492 F. Supp. 2d at 998. The court dismissed the Thirteenth Amendment claim summarily noting that the legislative history of the TVPRA (passed in 2003 — not the original TVPA of 2000), indicates that Congress' basis for enactment of the provisions thereof was the Commerce Clause. *Id.*[4]

It is this holding in *Brigestone* that is quoted by HKE in its Memorandum in support of its Motion to Dismiss. However, the *Bridgestone* court's subsequent discussion of § 1589 of the TVPA (one of the two statutes at issue in this motion) is quite different:

> Plaintiffs' second argument is based on a comparison of the language of section 1589 and section 1591, which addresses sex trafficking of children by any means and of adults by means of force, fraud or coercion. [footnote omitted]. The comparison actually weighs in favor of defendants on the issue of extraterritorial effect. Plaintiffs focus on the phrase "in or affecting interstate or foreign commerce." As first enacted in 2001, section 1591(a)(1) referred only to interstate commerce. Congress amended

---

[4] The TVPRA amended § 1591(a)(1) to add a "foreign commerce" component, but left §§ 1589 and 1590 as originally enacted by the TVPA.

the provision in 2003 to apply it to activity "in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States." Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, § 5(a)(2), 117 Stat. 2875, 2879.

From these statutory differences, plaintiffs infer that the language of section 1591(a)(1) limits its application more narrowly than section 1589. The court does not agree. In amending section 1591 to expand its reach, Congress relied upon its power over both interstate and foreign commerce, see H.R. Rep. 108-264(I), reprinted in 2004 U.S Code, Cong. & Ad. News 2408, 2413, and its sovereign power over the special maritime and territorial jurisdiction of the United States. **<u>Section 1589, by contrast, is obviously an exercise of Congressional power under Section Two of the Thirteenth Amendment</u>**. *See United States v. Garcia*, No. 02-CR-1105-01, 2003 U.S. Dist. LEXIS 22088 at 4-5 (W.D.N.Y.2003) (holding that Congressional authority to enact § 1589 stems from the Thirteenth Amendment, not the Commerce Clause).

*Bridgestone*, 492 F. Supp. 2d at 1002-03 (emphasis added).

In short, HKE's proposition that §§ 1589 and 1590 are based on the Commerce Clause is not borne out by the law it cites. Those two sections at issue in this motion are based on Congress' powers under the Thirteenth Amendment. There is no question that the Thirteenth Amendment applies in full force in the CNMI. *See* Covenant, § 501(a). HKE's motion should be denied.

3.  <u>HKE's Commerce Clause analysis is flawed</u>.

Here, the question is not whether the Commerce Clause applies in the CNMI, but whether acts of Congress based on the Commerce Clause have any force or effect in the CNMI.

This important distinction can be seen in such cases as *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1286-87 (9th Cir. 1985) and cases cited therein where the courts consider the potential limitation by the "negative implications" of the Commerce Clause, *i.e.*, the dormant Commerce Clause, to *local* legislation that may have an effect on interstate or foreign commerce. "The historical

role of the commerce clause has been confined to limiting regulatory and taxing action by states which may interfere with federal sovereignty." *Id.* at 1286. *See also Trailer Marine Transport Corp. v. Rivera Vazquez*, 977 F.2d 1, 7-8 (1st Cir. 1992) (discussing dormant Commerce Clause applicable to Puerto Rico).

Here, HKE's heavy reliance on an Eleventh Amendment immunity case — *Fleming v. Dept. of Public Safety*, 837 F.2d 401 (9th Cir. 1988) overruled on other grounds, *De Nieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992) — is misplaced. It was the applicability of Eleventh Amendment immunity itself, not laws enacted based on the Eleventh Amendment, that were at issue in that case.

Similarly, here, the issue is not the preclusive effects of the dormant Commerce Clause on CNMI legislation, but the ability of Congress to pass *federal* legislation based on its powers under the Commerce Clause and have that federal legislation apply to acts or omissions occurring in the CNMI. The *Fleming* decision is inapposite.

4. <u>Generally, post-Covenant Federal legislation based on the Commerce Clause applies with full force and effect to the CNMI.</u>

As stated above, regardless of whether the Commerce Clause applies in the CNMI, Congress has power to legislate extraterritorially. Further, that the Commerce Clause does not, itself, expressly apply to the CNMI does not prevent this Court from finding that a particular statute or an application of that statute has a sufficient nexus to interstate or foreign commerce, *e.g.*, a finding of the required express or implied commerce "jurisdictional element" of a federal crime. Congress' power to regulate foreign and interstate commerce is derived from Article I, § 8, cl. 3 of the United States Constitution, not from the Covenant.

Inarguably, Congress uses its "constitutional processes" when it enacts laws based on the

Commerce Clause, the Territorial Clause,[5] or some other constitutional basis for the statutory enactment. Also, inarguably, § 105(a) applies only to federal legislation enacted subsequent the Covenant's enactment.[6] So, the question, then, really becomes:

> **Does an act of Congress passed subsequent to January 9, 1978 and based *solely* on the Commerce Clause or some other Constitutional provision not expressly made applicable to the CNMI by § 501(a) of the Covenant run afoul of the limitations expressed in § 105(a) of the Covenant?**

Stated another way, for HKE to challenge successfully a Congressional act, HKE must show that the suspect Congressional act has the effect of modifying a fundamental provision of the Covenant, namely Articles I, II, III, § 501 or § 805. *See* Covenant, § 105(a); *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 754-55 (9th Cir. 1993).

Here, HKE needs to show that Congress' enactment of § 1595 as a private right of action for violations of §§ 1589 and 1590 of the TVPA has modified some fundamental Covenant provision. HKE has not and indeed cannot show that the TVPA or the TVPRA have in any way modified any

---

[5] Territorial Clause of the Constitution, U.S. Const. art. IV, § 3, cl. 2 ("The Congress shall have Power to ... make all needful Rules and Regulations respecting the Territory ... belonging to the United States.").

[6] Section 502(a)(2) provides that all laws (as opposed to constitutional provisions) and *any amendments thereto* applicable to Guam on the effective date of the Covenant and of general application to the several States are applicable to the CNMI. Arguably, post-Covenant Congressional acts that amend pre-Covenant laws that are applicable to the CNMI, regardless of their Constitutional basis, cannot run afoul of the limitations of § 105(a) of the Covenant and are of full force and effect in the CNMI. *See, e.g., United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) ("Section 502 governs the application to the CNMI of federal laws existing prior to January 9, 1978, and that Section 105 governs the application of federal laws enacted after that date.").

fundamental Covenant provision.[7]

HKE's suggestion that the 18 U.S.C. § 1589 (forced labor) or 18 U.S.C. § 1590 (transportation into forced labor) in any way affect the CNMI's control over its own immigration and customs is spurious. The implication thereby that the 18 U.S.C. § 1595 private right of action for violations of, *inter alia*, §§ 1589 and 1590 is equally ungrounded.

Further, despite HKE's suggestion that the human trafficking violations in the CNMI made criminal by §§ 1589 and 1590 are purely "local acts," and notwithstanding that Plaintiff advances allegations of her recruitment in and transportation from China (FAC ¶¶ 22 to 32), Congress has found that human trafficking is an international problem.

> As the 21st century begins, the degrading institution of slavery continues throughout the world. Trafficking in persons is a modern form of slavery, and it is the largest manifestation of slavery today. At least 700,000 persons annually, primarily women and children, are trafficked within or across international borders. Approximately 50,000 women and children are trafficked into the United States each year.
>
> \*\*\*
>
> Trafficking in persons is not limited to the sex industry. This growing transnational crime also includes forced labor and involves significant violations of labor, public health, and human rights standards worldwide.

TVPA, § 102(b)(1). *See also* TVPRA, § 2(1) ("Trafficking in persons continues to victimize countless

---

[7] It should be noted that nothing in *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749 (9th Cir. 1993) cited by HKE in its Memorandum suggests that the burden is somehow on the Government or a private litigant to prove that a Congressional act is constitutional. Congressional acts are presumed constitutional. *See, e.g., United States v. Morrison*, 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L. Ed. 2d 658 (2000) ("Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." (citation omitted)).

men, women, and children in the United States and abroad.").

It borders on the absurd to say that there is no substantial federal interest with regard to the transportation of indentured servants, sex slaves, or child labor from foreign countries to the CNMI and other United States possessions, including an interest the federal prosecution of traffickers, federal protection and assistance for trafficking victims, federal immigration benefits for trafficking victims, and ensuring that trafficking victims have a civil remedy against those that trafficked and abused them.

To be clear, here HKE cannot in good faith be arguing that §§ 1589 and 1590 are generally lacking a nexus to interstate and foreign commerce. HKE's recitation to Commerce Clause cases necessarily must be for the purpose of showing that §§ 1589 and 1590 do, indeed, have a nexus to interstate and foreign commerce, *i.e.*, that they require the showing of a "jurisdiction element" that, HKE argues, as a matter of law cannot exist in the CNMI. Thus, HKE's discussion of Commerce Clause cases is only marginally relevant to the issue of whether acts based on the Commerce Clause have any force or effect in the CNMI.[8]

Plaintiff would first note that it is not logical to conclude that the parties to the Covenant would have intended that all pre-Covenant federal laws enacted (or amended) which were based solely on the Commerce Clause would remain valid, but that all subsequent laws with the same basis would have no force or effect. There is no doubt that the former is the state of the law. *See, e.g., Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1439 (9th Cir. 1997); *United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d at 756; *Hillblom v. United States*, 896 F.2d 426, 431 (9th Cir. 1990); *Fleming v. Dept. of Public Safety*, 837 F.2d 401 (9th Cir. 1988); *Micronesian*

---

[8] However, given HKE's heavy reliance on in *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003), Plaintiff would note that *McCoy* was essentially overruled by *Gonzales v. Raich*, 545 U.S. 1 (2005). *See, e.g., United States v. Overton*, 2007 WL 2815986 (D. Mont.); *United States v. Panner*, 2007 WL 549925 (E.D. Cal.).

*Telecommunications Corp. v. N.L.R.B.*, 820 F.2d 1097, 1100 (9th Cir. 1987); *United States v. Liu*, 2000 WL 34226922 (D.N.Mar.I.) (18 U.S.C. § 1955 applies to CNMI); *United States v. Bo*, 1997 WL 33630676 (D.N.Mar.I.) (Hobbs Act applies to CNMI).

It is also not logical to conclude that the parties to the Covenant would have intended that all pre-Covenant federal laws based on the Commerce Clause do not apply in the Commonwealth. If that was what was intended, then that would have been reflected in the Covenant; instead we have § 502(a)(2) which has been consistently interpreted as incorporating all pre-Covenant federal laws despite their particular constitutional basis. *See Fleming v. Dept. of Public Safety*, 837 F.2d 401 (9th Cir. 1988) ("As the Supreme Court long ago observed, 'in an instrument well drawn, as in a poem well composed, silence is sometimes most expressive.'" (citation omitted)).

The only logical conclusion is that, notwithstanding that the Commerce Clause itself was not expressly adopted by § 501(a) of the Covenant, it was presumed by all that pre-Covenant and post-Covenant laws based on the powers of Congress to regulate interstate and foreign commerce would apply with full force and effect in the CNMI. *See, e.g., United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749 (9th Cir. 1993) (post-Covenant "Inspector General Act of 1978" judge to be in compliance with § 105(a) of the Covenant, notwithstanding that Territorial Clause was not expressly made applicable to CNMI through § 501(a) of the Covenant); *A & E Pacific Const. Co. v. Saipan Stevedore Co., Inc.*, 888 F.2d 68, 71 (9th Cir. 1989)(Shipping Act of 1984 applies to the CNMI and judge to be in compliance with § 105(a) of the Covenant).

Indeed, it seems most likely that the Commerce Clause, the Territorial Clause and the Supremacy Clause were specifically excluded from the Covenant not to avoid the application of subsequent federal legislation to the CNMI, generally, but to allow local legislation of interstate and foreign commerce without the imposition of dormant Commerce Clause limitations (applicable also through the Territorial Clause) that generally affect and limit the sovereignty, autonomy, and internal self-governance of States and Territories. Otherwise, the efficacy of CNMI's control over

such things as customs and the imposition of various excise taxes would be jeopardized. *See, e.g.*, *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137 (1st Cir. 2001) (sugar importers prevailed in dormant Commerce Clause challenge to Puerto Rico sugar importation regulation).

In short, the issue of whether the Commerce Clause was expressly made applicable to the CNMI through the Covenant is not relevant to an exercise by Congress of its powers to regulate interstate and foreign commerce. *See, e.g.*, *JDS Realty Corp. v. Gov. of Virgin Islands*, 824 F.2d 256, 259 (3rd Cir. 1987) *vacated and remanded*, 484 U.S. 999, 108 S.Ct. 687, 98 L. Ed. 2d 640 (1988), *appeal dismissed as moot*, 852 F.2d 66 (3rd Cir.1988) ("That the Virgin Islands is an unincorporated territory is of no consequence in terms of the constitution's grant of affirmative power to Congress to regulate interstate commerce." (citations omitted)).

In any case, as cited above, the sections of the TVPA challenged by HKE are based on the Thirteenth Amendment, wholly applied to the CNMI through § 501(a). *See, e.g.*, *John Roe I v. Bridgestone*, 492 F. Supp. 2d 988, 1002-03 (S.D. Ind. 2007). Here, this Court does not need to reach the issue of the efficacy of post-Covenant federal legislation based solely on the Commerce Clause.

5. <u>HKE has failed to show that Congress' enactment of the TVPA exceeded its constitutional bounds</u>.

As cited above, Congress expressly made the TVPA and TVPRA applicable to the CNMI. The *Garcia* opinion, cited by the *Bridgestone* court, also found at 2003 WL 22938040, makes clear that there is a presumption of constitutionality and when challenging Congress' authority (here a challenge to the very same statute), there is a heavy burden on HKE.

> In order to invalidate a congressional enactment, there must be a plain showing that Congress has exceeded its constitutional bounds. *United States v. Morrison*, 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L. Ed. 2d 658 (2000).
>
> The defendant has failed to make such a showing and cannot do so since Section 2 of the Thirteenth Amendment expressly confers power on Congress to enact

§ 1589 as "appropriate legislation to enforce" the provision set forth in Section 1 of said Amendment.

*United States v. Garcia*, 2003 WL 22938040 (W.D.N.Y.).

Just as in *Garcia*, HKE here cannot meet its burden to show that Congress exceeded its authority when passing §§ 1589 and 1590 of the TVPA. HKE's motion must fail.

Respectfully submitted this 27th day of March, 2008.

/s/ Mark B. Hanson

MARK B. HANSON, ESQ.
Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738 P.O. Box 10,000
Saipan, Mariana Islands 96950
Telephone: (670) 233-8600
Facsimile: (670) 233-5262
E-mail: mark@saipanlaw.com

Attorney for Plaintiff Jiang Li Rong

# CERTIFICATE OF SERVICE

I hereby certify that the following attorneys were served with a copy of the foregoing through the Court's electronic case filing system:

G. Anthony Long, Esq.
LAW OFFICES OF G. ANTHONY LONG
P.O. Box 504970
Saipan, Mariana Islands 96950

Attorney for Hong Kong Entertainment and Alfred Yue

Viola Alepuyo, Esq.
CAMACHO & ALEPUYO
Second Floor, Lim's Building, Oleai
P.O. Box 5506 CHRB
Saipan, Mariana Islands 96950

Attorney for Echo Karaoke and Zhang Jian Hua

John D. Osborn, Esq.
CARLSMITH BALL LLP
Carlsmith Building, Capitol Hill
P.O. Box 505241
Saipan, Mariana Islands 96950

Attorney for Century Insurance Co., Ltd.

DATED: March 27, 2008 /s/ Mark B. Hanson
MARK B. HANSON