Colin M. Thompson, Esq.
Thompson Law Office LLC
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776

*Attorney for Lauri Ogumoro*

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JIANG LI RONG<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>HONGKONG ENTERTAINMENT (OVERSEAS) INVESTMENT LTD. NEW ECHO ENTERTAINMENT, INC. ALFRED YUE, ZHANG JIAN HUA, ZHANG DE MING, ZHANG JIAN GANG, LI LI, LI FENG, and DOES 1-10<br><br>　　　　　　　Defendants. | CIVIL ACTION NO. 05-0048<br><br>MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER and MOTION TO QUASH SUBPOENA<br><br>Date:<br>Time:<br>Judge: Hon. Alex R. Munson |

**COMES NOW**, Lauri Ogumoro, by and through counsel, Colin M. Thompson, and hereby moves the Court, pursuant to Fed.R.Civ.P. 45(c)(3)(A)(iii)-(iv), to quash or modify the subpoena commanding Ms. Ogumoro to appear for a deposition and produce documents in the above captioned case. In addition or in the alternative, Ms. Ogumoro seeks a protective order pursuant to Fed.R.Civ.P. 26(c). Defendants Hong Kong Entertainment (Overseas) Investments Ltd. and Alfred Yue seek testimony and documents from Ms. Ogumoro, Guma Esperansa and Karidat Social Services that implicates matter protected by the social worker confidentiality privilege and seeks a broad range of documents such as to create an undue burden on Ms. Ogumoro in attempting to

1

comply with the subpoena. This motion is supported by the record, the accompanying memorandum, exhibits and the applicable law.

## BACKGROUND

On June 20, 2008, Ms. Ogumoro, Guma Esperansa in care of Karidat Social Services received a Subpoena issued by this Court commanding Ms. Ogumoro to appear at the Law Office of G. Anthony Long, Beach Road, San Jose, Saipan on August 1, 2008 at 10:00 a.m. to testify at the taking of a deposition in the above captioned case. The Subpoena also commanded Ms. Ogumoro to produce and permit inspection and copying of numerous documents, including,

All documents in the possession custody and control of Guma Esperansa which mentions, concerns or relates to Jiang Li Rong.

All documents in the possession custody and control of Karidat Social Services which mentions, concerns or relates to Jiang Li Rong.

All documents in the possession custody and control of Guma Esperansa which mentions, concerns or relates to human trafficking.

All documents in the possession custody and control of Karidat Social Services which mentions, concerns or relates to human trafficking.

All documents in the possession custody and control of Guma Esperansa which relates to or concerns its application for and receipt of federal funding.

> All documents in the possession custody and control of Karidat Social Services which relates to or concerns its application for and receipt of federal funding.

Sometime between July 21, 2008 and July 28, 2008, Ms. Ogumoro, through counsel, wrote an e-mail message to Defendants' counsel rescheduling the deposition date but reserving "all rights to move for a protective order in advance of the September deposition date if we are not able to negotiate acceptable protections." Counsel for Ms. Ogumoro and Defendants met to discuss appropriate protections, however, they were not able to come to an agreement.

## CERTIFICATE

Ms. Ogumoro certifies that she has in good faith conferred with Defendants in an effort to resolve the dispute without court action.

## LAW AND ARGUMENT

### A.

Federal Rule of Civil Procedure 45(c)(3)(A) provides that: "On timely motion, the issuing court must quash or modify a subpoena that:... (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." An "undue burden" can be identified through looking at factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998) (citing *United States v. Intern'l Bus. Machines, Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).

Fed.R.Civ.P. 26(c) allows a Court, for good cause shown, to make any order which justice requires to protect a person from undue burden including an order that disclosure not be had or that certain matters not be inquired into.  Fed.R.Civ.P. 26(c)(1)-(4).  *See also* Fed.R.Civ.P. 26(b)(2)(iii)(providing that the court must limit the extent of discovery if the "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.)  In resolving a Rule 26(c) motion, the Court must weigh the need of the party seeking the discovery against the burden on the party producing it. *A Helping Hand, LLC v. Balt. County*, 295 F. Supp. 2d 585, 592 (D.Md. 2003).  One seeking a protective order carries the burden to show good cause and the right to be protected. *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000).

**B.**

Ms. Ogumoro asserts that her communications with Jiang Li Rong and other clients and documents regarding Jiang Li Rong and other clients are privileged as she is a social worker dealing with cases of human trafficking who either directly communicated with Jiang Li Rong or directed others with Guma Esperansa to communicate with Jiang Li Rong  These communications with Jiang Li Rong and other clients were confidential, and the communications were made during the course and scope of Guma Esperansa's service and aid to Jiang Li Rong and other clients.  Ms. Ogumoro believes that this Court should extend the social worker confidentiality privilege to cover the present situation.

As a preliminary matter, even though this case involves both federal and state claims, the federal law of privilege should apply.  *Granberry v. Jet Blue Airways*, 228 F.R.D. 647, 650 (N.D. Cal. 2005); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458 (N.D. Cal. 1978)(stating that "in federal question cases where pendent state claims are raised the federal common law of

privileges should govern all claims of privilege raised in the litigation"); see also 6 *Moore's Fed. Practice* § 26.47[4] ("In federal question cases . . . in which state law claims are also raised . . ., any asserted privileges relating to evidence relevant to both state and federal claims are governed by federal common law.").

Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting "common law principles... in the light of reason and experience." See *Religious Technology Center v. Wollersheim*, 971 F.2d 364, 367, n. 10 (9th Cir. 1992). "[T]he common law is not immutable but flexible, and by its own principles adapts itself to varying conditions." *Jaffee v. Redmond*, 518 U.S. 1, 8-9 (1996)(citing *Funk v. United States*, 290 U.S. 371, 383 (1933)). The Rule thus directs federal courts to "continue the evolutionary development of testimonial privileges." *Trammel v. United States*, 445 U.S. 40, 47 (1980).

In *Jaffee v. Redmond*, 518 U.S. 1 (1996), the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." Because the "vast majority of states explicitly extended a testimonial privilege to licensed social workers," the Supreme Court recognized a privilege for communications with licensed clinical social workers as well, stating that "their clients often include the poor and those of modest means who could not afford the assistance of a psychiatrist or psychologist... but whose counselling sessions serve the same public goals." *Id.*

In *Oleszko v. State Comp. Ins. Fund*, 243 F.3d 1154 (9th Cir. Cal. 2001), the Court extended *Jaffee* by holding that the privilege recognized in *Jaffee* extends to unlicensed counselors employed by a company's employee assistance program. In the case, the plaintiff sought discovery from the defendant's Employee Assistance Program ("EAP") in an attempt to show a pattern of sex and race discrimination and retaliation on the part of the defendant. *Id.* at 1155. The company's EAP refused

to produce records or to testify about the substance of communications with other employees on the ground that the communications were privileged under Federal Rule of Evidence 501 and the Supreme Court's holding in *Jaffee*. *Id.* The purpose of the EAP counselors was to help resolve issues affecting employee health and well-being by providing comprehensive assessments and short-term counseling, referring clients for appropriate treatment where necessary. No one on the EAP staff was a licensed psychiatrist, psychologist, or social worker, but they all had backgrounds in psychology or social work, including relevant clinical and/or field experience. *Id.* at 1156.

In reaching its holding, the Court noted that "[w]hile the *Jaffee* decision created an absolute privilege for confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment and extended the privilege to licensed social workers engaged in psychotherapy, ... it explicitly left to later courts the task of delineating the full contours of the privilege." *Id.* at 1156-57(internal quotations and citations omitted). Here, the Court explained, "the EAP's purpose is to provide counseling. EAP personnel are trained as counselors, are held out as counselors in the workplace, and, like psychotherapists, their job is to extract personal and often painful information from employees in order to determine how best to assist them." *Id.* at 1157. The Court continued, "EAPs embody what may be viewed as a team approach to providing mental health services" and "[t]o protect only disclosures made during psychotherapy while exposing those same disclosures to discovery when made to another member of the mental health team in order to access psychotherapy would significantly undermine the psychotherapist-patient privilege." *Id.* Finally, the Court noted that many states had already enacted legislation creating a privilege for confidential information provided to EAP counselors. *Id.* at 1158. In conclusion, the Court stated that "[g]iven the importance of the public and private interests EAPs serve, the necessity of confidentiality in order for EAPs to function effectively, and the importance of protecting this gateway to mental health treatment by licensed psychiatrists, psychologists, and social workers" the

6

privilege recognized in *Jaffee* extends to unlicensed counselors employed by a company's employee assistance program. *Id.* at 1159.

In *United States v. Lowe*, 948 F. Supp. 97, 99 (D. Mass. 1996), a case commented favorably on by *Oleszko*, the court extended the psychotherapist-patient privilege to rape crisis counselors who were neither licensed psychotherapists nor social workers but were under the direct control and supervision of a licensed social worker, nurse, psychiatrist, psychologist, or psychotherapist. Citing a U.S. government study[1], a rape crises center and the government argued that *Jaffee* should be extended to create a federal privilege under Fed.R.Evid. 501 for rape counselling records because a majority of states and the District of Columbia have adopted a privilege for rape counselling communications. Id. "In light of the policies expressed in *Jaffee*," the Court agreed that a client of a rape counselling center holds some form of a federal privilege for communications with a rape crisis counselor. *Id.*

In light of *Jaffee* and *Lowe,* the Court should create a privilege protecting the confidential communications of persons dealing with counselors or social workers when such communications relate to services rendered in aid to alleged victims of human trafficking, be it involving physical violence or sexual violence.  Such a privilege is warranted where here, as in cited cases, effective counseling of human trafficking victims depends upon an atmosphere of confidence and trust in which the victim is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which a victim seeks services of social workers at places like Guma Esperansa, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of

---

[1] U.S. Dep't of Justice, *Report to Congress: The Confidentiality of Communications Between Sexual Assault or Domestic Violence Victims & Their Counsellors, Findings and Model Legislation* 3 (1995) ("As of December 1995, twenty-seven states and the District of Columbia have enacted statutes that protect from disclosure, to differing degrees,

7

disclosure may impede development of the confidential relationship necessary for successful servicing of a victim.

In light of *Olezka,* there is a strong chance that the Ninth Circuit would uphold a privilege in the present circumstance. *Olezka* shows that the Ninth Circuit is protective of confidential communications with social workers and counselors with its holding that the privilege recognized in *Jaffee* extends to unlicensed counselors employed by a company's employee assistance program. *Olezka*'s favorable citation of *Lowe*'s holding that communications to counselors at a rape crises center were privileged further shows that the Ninth Circuit would find confidential communications to Ms. Ogumoro and other employees privileged. Quite simply, there is no fundamental difference between the services provided at a rape crises center and the services provided by Ms. Ogumoro and Guma Esperansa. The Court should find the confidential communications of Jiang Li Rang made to Ms. Ogumoro and Guma Esperansa to be privileged from disclosure to Defendants.

### C.

Defendants subpoena requesting documents creates an undue burden on Ms. Ogumoro and Guma Esperansa as the documents do not appear sufficiently relevant to justify the broad scope of the demand, the document request is overbroad and Ms. Ogumoro does not have custody or control of the documents of Karidat Social Services. Accordingly pursuant to Fed.R.Civ.P. 45 (c)(3)(A)(iii) and (iv) and Rule 26, Ms. Ogumoro requests an order from the Court quashing the subpoena or modifying the terms.

Ms. Ogumoro is not the custodian of records and does not maintain control of custody of records belonging to Karidat Social Services. Accordingly, the Subpeona is overbroad with respect

---

confidential communications that arise from the relationship between sexual assault and/or domestic violence victims and their counselors.").

8

to the demand for documents outside her control. Ms. Ogumoro is the custodian of records for Guma Esperansa and she is only able to respond to those requests.

The Subpoena demanded production of documents in the following categories:

1. All documents in the possession custody and control of Guma' Esperansa which mentions, concerns or relates to Jiang Li Rong;
2. All documents in the possession custody and control of Guma' Esperansa which mentions, concerns or relates human trafficking;
3. All documents in the possession custody and control of Guma' Esperansa which relates to or concerns its application for and receipt of federal funding

The categories of documents identified by Ms. Ogumoro as responsive to request **number one** above include:

- Client file, two volumes; daily logs of services to the client while in the shelter. Client stayed at Guma' Esperansa for about 27 months;

- Contract for monetary support for client with United States Conference of Catholic Bishops (USCCB) Refugee and Migration Services Pre-certified victims of human trafficking program and all records regarding monetary support on behalf of client to Guma' Esperansa;

- Salvation Army Hawaii American Samoa Trafficking Services Program- contract/MOU for services and monetary support to client;

- Records relating to federal grant for funding to assist the victims of trafficking;

- Clients' T-Visa application which was done by Bruce Mailman(Guma' Esperansa asserts attorney client and work product privilege to the extent applicable) ;

- Notification of certified victim of human trafficking from the United States Department of Health and Human Services and documentation regarding her Certification from HHS;

- T--Visa and U.S. employment authorization;

- Notification that her son was granted a derivative T-Visa;

- Records of Guma' Esperansa's request for assistance and coordination with the International Organization for Migration (IOM) for family reunification for son and mother (JLR).

To the extent that document request is limited to those documents identified above, Ms. Ogumoro does not object on the grounds of undue burden. To the extent that the terms "concerns" and

9

"relates" have broader application, Ms. Ogumoro objects because the documents are not readily available with in the organizational files and would require extensive searching to determine whether or not they exist.

The categories of documents identified by Ms. Ogumoro as responsive to request **number two** above include:

- Guma' Esperansa has created a library of information on human trafficking; downloading articles from the internet and newspaper clippings since May 2005;

- Guma' Esperansa has assisted 54 victims of human trafficking to varying degrees since May 2005. These files contain privileged, private and confidential information;

- MOU with Micronesian Legal Services for services to HT victims (May contain attorney client or attorney work product information);

- MOU with the Commonwealth Health Center for services to HT victims;

- Human Trafficking Interdiction Task Force (HTIC) MOU and meeting minutes;

- Contract with United States Conference of Catholic Bishops (USCCB) for certified services to victims of human trafficking;

- Letters to the CNMI AG requesting investigation and/or follow-up on trafficking cases;

- Correspondence and contract with the Family Violence Prevention Fund, San Francisco, CA to do a human trafficking training conference in the CNMI which was conducted here on Saipan in January 2008;

- Testimony in front of the U.S. Senate Energy and Natural Resources Committee oversight hearing on the CNMI, February 2007.

While some of this information may be discrete and unobjectionable, the time necessary to review and redact private information from the files creates an undue burden on the witness. Also, the cost of copying these documents creates an undue burden. The relevance of a request for documents "which mentions, concerns or relates human trafficking" is limited and does not justify the breadth of this request.

The categories of documents identified by Ms. Ogumoro as responsive to request **number three** above include:

- Victim of Crime Act (VOCA) and Violence Against Women Act (VAWA) funding through the Criminal Justice Planning Agency.
- Emergency Shelter Grant (ESG) from the Department of Housing and Urban Development through the Northern Marianas Housing Corporation.
- Emergency Food and Shelter National Board Program funding from the United Way/FEMA.
- U.S. Department of Justice – Office of Victims of Crime, Services to Victims of Human Trafficking; pre-certified victims only.
- U.S. Department of the Interior – Office of Insular Affairs carry over funding for battered immigrants.

Just as with request number two, the time necessary to review and redact private information from the files creates an undue burden on the witness. Also, the cost of copying these documents creates an undue burden.

## CONCLUSION

For the foregoing reasons, Lauri Ogumoro, respectfully requests that the Court grant her motion for Protective Order and Motion to Quash Subpoena served.

Dated this 21st day of August, 2008.

/s/
**COLIN M. THOMPSON**
Thompson Law Office, LLC